The opinion of the Court was delivered at this term by
Jackson, J.
The unlading of the ship at Bayonne, and the sending of a part of her cargo to Passage, to be there reladen, would undoubtedly constitute a deviation, if not justified by the occurrences of the voyage. It appears, that the ship was loaded at Bayonne, under the direction of a public officer there, who has, by law, the entire control of all ships in the harbour, and by whose orders this ship sailed. That was the commencement of the voyage, within the terms of this policy. Afterwards, in consequence of one of the perils insured against, the ship was compelled to put back to unlade and repair; and it was found necessary, or mosr for the interest of all concerned, to send a part of the cargo round to Passage, to be there reladen. We must understand, from the direction of the judge, and the verdict of the jury, that these are substantially the facts in the case. If so, it is the same as if she had sailed from Mantes, or any other port in France, and had been driven by storms upon the bar of Bayonne. The master might then have lightened the ship, in order to carry her up to Bayonne to make repairs, and might have unladen the cargo in any manner that the circumstances should have rendered necessary, or most expedient. If he acted, under such circumstances, with good faith and sound discretion, there would be no deviation.
The remaining questions are, whether the taking of the commission as a letter of marque, or the capture made in virtue of it, will discharge the insurers.
The authority of the case of Denison vs. Modigliani has been very much shaken ; and, if the question were now new, it would be difficult to support that decision, upon the *rea *104 sons there given, or upon any others that have been suggested in the argument. It is justly remarked by Marshall, on that case, that, as an intention to deviate will not avoid the policy, it is not easy to conceive why a mere temptation to deviate should have that effect.
The other question, as to the capture made by the ship Volant, deserves more consideration. The facts in the case present this question in a manner very favorable to the assured. The commission was taken in a foreign country, and after the policy was written ; so that there is no pretence of concealment, or misrepresentation, in effecting the insurance. Then, in making the capture, the Volant did not chase the prize; nor was there any departure from her course, nor delay of her voyage, except what was occasioned by taking possession of the prize, and exchanging the men. This seems to present the naked question, whether the taking of a prize, under any circumstances, would discharge the underwriters on this policy ; and, on the whole, we are satisfied that this is a deviation, which does discharge them.
If the Volant had cruised for prizes, or had lain to for a month in the track of the enemy’s merchant ships, for the purpose of making captures, no one doubts that this would have been a deviation. The result would have been the same, if she had lain to for that purpose one day or one hour. It is not the increase, but the change, of the risk, that constitutes a deviation. In the case supposed, the ship would, for a time, have abandoned the voyage insured ; she would have been employed in a different adventure and different voyage from that described in the policy. The master, instead of endeavouring to bring home his cargo in the most expeditious manner, would be engaged in seizing another ship and cargo, for the profit of himself and his owners. The ship insured, instead of being employed merely in transporting the merchandise on the voyage described in the policy, would become a ship of war, employed in making prizes.
* In the case of Parr vs. Anderson, (7) the ship was insured “ with or without a letter of marque.” In the course of the voyage, she descried a Spanish ship, and altered her course a quarter of a point, and pursued the Spanish ship about a quarter of an hour, when she abandoned the chase, and continued her voyage. It was not doubted, that this alteration of her course, if it was done for the purpose of capturing the ship in sight, would be a deviation, unless authorized by the expression before quoted from the policy. The judge, who tried the cause, at first thought, that even the liberty to carry a letter of marque would not justify such a de *105 viation, “nor give the assured a liberty of engrafting on a commercial adventure an adventure for hostile capture.” But upon some doubts, which afterwards arose on the construction of that clause in the policy, a new trial was ordered, to ascertain whether it had obtained, in use and practice, any. known and definite import. It does not appear what was the result of the second trial; but it seems very clear that the insurers must have been discharged, unless the liberty expressly given in the policy to take a letter of marque would justify the assured in chasing a ship in sight, for the purpose of capturing her.
In the case of Phelps vs. Auldjo, (8) the policy seems to have been in the common form, and it was held to be a deviation to go out of port, to examine a strange vessel which appeared off the harbour. The only question raised in that case was, whether the conduct of the master was justified or excused by the orders which he received on that occasion from the commander of a ship of war then in the same harbour.
So the case of Lawrence & al. vs. Sydebotham, (9) shows with what strictness the conduct of the assured is considered, when he superadds to the mercantile adventure, which is the principal object of the voyage, any other adventure or project, not expressly authorized by the policy. In that case the ship insured had liberty to take a letter of * marque, and to chase, capture, and man prizes ; but it was held to be a deviation to shorten sail or lie to, for the purpose of convoying a prize.
In the case at bar, there is no intimation in the policy that the ship would take a letter of marque. And, although the taking it on board might furnish only a temptation to deviate, and so not discharge the insurers ; yet, if a deviation takes place, it is not excused by the nature or the force of the temptation.
There is no doubt that the Volant, whether she had a letter of marque or not, might have beaten off any ship that should have attacked her, without prejudice to this insurance. This would have been necessary, to accomplish the objects of the voyage insured. But, in the present case, this purpose was fully answered, as soon as it was ascertained that the strange ship was not strong enough to take the Volant, or that she would not attempt it. All that was done by the master afterwards was, not for the purpose of prosecuting his voyage with more safety or despatch, but with a view to another and distinct object; with a design to acquire gain as a privateer or cruiser, and to derive a profit from her commission and her guns, instead of using them merely to defend the ship and to advance the voyage insured.
If the ship might lawfully put about for the purpose of making *106 this capture, how far is she permitted to proceed in this new course ? If delay for one hour is justifiable, why might she not lay to for one day, or one month, for the same purpose ? The length of time, or space, in a deviation, is not material. If there had been a high wind, or a heavy sea, which prevented the captors, for some days, from exchanging crews, and manning the prize, they might, upon the principles contended for by the plaintiffs, have lain to for that time, although the wind was fair, and they would lose, perhaps, one or two hundred leagues in their passage. There appears to be no principle, which would justify the assured in abandoning the prosecution of the voyage, by * putting about once, lying to one hour, and taking one prize, which would not justify the repetition of the act twenty times, if they should meet so many of the enemy’s ships, and the lying to, with each of them, for any ' length of time that should be necessary to effect the capture.
The only material difference between a privateer and a ship sailing under a letter of marque is in the use to be made of their commissions. The one intends to cruise in search of prizes, and the other intends to attack and take only what may fall in her way. The r’ak is the same, so far as the fighting and the diminution of the crew affect it. Both of them, when attacking an enemy’s ship, are doing the same act, and with the same views ; both are delayed for the same object. The only difference is, that the one is not likely to be ■ so often exposed in this manner as the other. But this is only a variance in degree, and not in kind. The object is not, in either case, a mere mercantile adventure ; but there is also a design _and expectation of deriving a profit from making captures. This last object, or adventure, is not within the voyage described in this policy.
When it is expressed in the policy, that the ship may take a letter of marque, the insurer is understood to agree that she may capture any ship of the enemy that shall fall in her way. But, when the insurance is in the usual form, as on a common mercantile voyage, without any mention of her having a letter of marque ; although the taking of the commission may not vitiate the policy, yet the using of it for the profit of the owners, and the taking of a prize, is a deviation. It can make no difference, whether the ship goes out of her course to seek the prize, or only abandons her course to make the capture, after seeing the prize ; whether this abandonment be by altering her course, or by lying to ; or whether the time devoted to this object be one hour or one month. If the line is not drawn here, it will be impossible to say to what extent a ship, under such circumstances, may depart from the regular course of her voyage ; and the underwriter upon a common mercantile * voyage will be exposed to hazards as great as when he expressly *107 agrees that the ship may take a commission, and may make captures.
Upon the question of barratry, we give no opinion ; as it is said that this point was not gone into at the trial; and as the counsel agreed to waive it on the argument of the cause. As, from the result of our opinion, there must be a new trial, the plaintiffs will have opportunity to maintain the action on that ground, if the evidence will support them in it.

JVew trial ordered.

 6 East. 202.

 2 Camb. Rep. 350

 6 East, 45.