# CHARLESTON

Bank v. Ohio Valley Furniture Co.

57   625
61   132

Submitted March 29, 1905.   Decided April 25, 1905.

1.  Negotiable Instruments—*Innocent Purchaser—Notice.*

A party who takes negotiable paper before maturity, for a valuable consideration, without knowledge of defect of title, and in good faith, obtains indefeasible title thereto, although, at the time of the purchase, he had knowledge of circumstances which were sufficient to excite, in the mind of a prudent man, a suspicion of want or defect of title, and was grossly negligent in taking it.  (p. 629.)

2.  Negotiable Paper—*Notice of Title—Duty of Assignee.*

In the absence of actual or constructive notice of defect of title, fraud or other circumstance which would vitiate the title, a purchaser is under no duty to make inquiry as to how the holder of such paper acquired it.  He may safely rely upon the possession of the holder as sufficient evidence of title for the purposes of a valid contract of sale.  (p. 630.)

3.  Negotiable Instruments—*Title of Purchaser—When Good.*

If the holder of such paper truly inform a person intending to purchase it, that he has no title to it, or that he holds it in the capacity of agent for the maker or other party to it, and afterwards a sale of the paper is effected between the parties, the purchaser, under the hypothesis first stated herein, takes no title, and, under the second, his title depends upon the authority of the agent, actually or apparently conferred.  (p. 631.)

4.  Negotiable Instruments—*Presumption of Ownership—Agent.*

An agent having in his possession, for discount, sale, safekeeping or other purpose, on behalf of his principal, bills, notes or other paper belonging to his principal, indorsed in blank, or in such other form as to permit transfer of title thereto by mere delivery, may be regarded, by strangers having no notice of the agency or the capacity in which such paper is held, as the owner thereof, and dealt with accordingly in respect to it.  (p. 634.)

5.  Negotiable Paper—*Agent and Agency.*

But, if in such case, the stranger has notice of the fact of agency, his dealings and transactions, respecting the paper, are governed by the law of agency.  He must regard the paper as the property of the principal and confine his dealings with the agent, concerning it, within the scope of the authority of the latter, actually or apparently conferred.  (p. 636.)

6.  Negotiable Paper—*Possession—Declaration of Vendor.*

One who has destroyed his *prima facie* title to negotiable paper, arising from the fact of possession, by admitting that he has no title, cannot restore it by a mere verbal claim that he has since obtained

title or the right to discount the paper for his own benefit. A purchaser who is put on inquiry by sufficient knowledge, cannot rely upon information imparted by one whose interests it is to deceive him. (p. 638.)

7. NEGOTIABLE PAPER—*Agent—Agency Presumed.*

A bank discounting negotiable paper, with knowledge that the person from whom it is taken holds it as agent only, is bound to ascertain the extent of the authority of the agent; but, in the absence of knowledge of any limitation upon the authority apparently conferred by the principal, it may rely upon such apparent authority. (p. 636.)

8. NEGOTIABLE PAPER—*Ownership and Agency Incompatible.*

Absolute ownership of a thing and agency respecting it in the same person are incompatible, the latter being merged in the former. Hence, a negotiable note in the hands of an agent, indorsed in blank by the principal, cannot be regarded by a stranger, having notice of the agency, as both *prima facie* proof of title in the agent and a power of attorney, conferring upon the agent all the power and authority that are incident to ownership, but he may deal with the agent as such and rely upon the note as conferring apparent authority to sell it and receive payment on behalf of the principal. (pp. 635, 636.)

9. AGENT AND AGENCY—*Principal Not Bound, When.*

A principal is not bound by any act of his agent which is not within the scope of the actual or apparent authority of the latter. (p. 636.)

10. AGENT AND AGENCY—*Limitations of Agency.*

Every agency is subject to the legal limitation, that it cannot be used for the benefit of the agent himself or any person other than the principal, in the absence of an agreement that it may be so used; and, as this is matter of law and not of fact, all persons must take notice of it. (p. 638.)

11. PRINCIPAL AND AGENT—*Conversion by Agent—Knowledge by Purchaser.*

By perverting his powers to his own personal ends and purposes, an agent acts in excess of his authority, and persons who knowingly participate in such act of perversion, as by purchasing the principal's property, with knowledge that the agent intends to convert the proceeds to his own use, are not protected by the authority conferred upon the agent. (p. 638.)

12. PRINCIPAL AND AGENT—*Extent of Agency Limited by Naked Power.*

Naked power to do acts for another negatives all authority on the part of the agent to act in reference to the principal's business for the benefit of any one other than the principal. (p. 639.)

Error to Circuit Court, Kanawha County.

Action by The Merchants' & Manufacturers' National Bank against the Ohio Valley Furniture Company and others. Judgment for plaintiff.   Defendant brings error.

*Reversed.*

BROWN, JACKSON & KNIGHT and ANGUS W. McDONALD, for plaintiffs in error.

PRICE, SMITH & SPILLMAN and J. S. SPENCER, for defendant in error.

POFFENBARGER, JUDGE:

The Ohio Valley Furniture Company, a corporation, complains of a judgment for $2,625.96, rendered by the circuit court of Kanawha county on the 21st day of March, 1901, upon a negotiable promissory note for $2,500.00, dated May 4, 1900, signed by the Ohio Valley Furniture Co. by W. B. Fuller, its treasurer, countersigned by W. B. Shober, president, payable four months after date to the order of W. B. Fuller, without off-set, and negotiable at the Kanawha Valley Bank at Charleston, West Virginia.   On the back of the note were the endorsements in blank of  W. S. Walker, W. B. Shober, J. W. Roche and W. B. Fuller, all stockholders and prominently concerned and interested in the company. That was the condition of the note before it was negotiated. It was one of eight or ten notes, each for the same amount and drawn in the same way, which during the year 1900, from in May until in September, were delivered by said company to Arch H. Huston of Columbus, Ohio, as agent of said Ohio Valley Furniture Co., for the purpose of having the same discounted and remitting the proceeds to said company. The note sued on here was discounted by the Merchants and Manufacturers National Bank of Columbus, Ohio, at the request of said Huston, and for his benefit, and his endorsement follows the others on the note.   Howard C. Park, cashier of said bank, was examined as a witness for the defendant, and testified that he had known Huston for eighteen or twenty years, and was on good terms with him; that Huston had an account at his bank; that he discounted the note for him June 11, 1900; that prior thereto Huston had told

him that he had paper that he wanted to use for the Ohio Valley Furniture Co., which was endorsed by prominent stockholders in the company; that Huston wanted him, as cashier of the bank, to discount the paper for the company; that he supposed Huston was representing the company in that behalf; that he told Huston that he did not care to take the paper; that he had such conversation with Huston both before and after June 11th; that when Huston brought him the note sued on here, he stated "that it was his own matter and an accomodation to him;" that, as Huston was a customer at witness's bank and had been for sometime, witness naturally took the paper; that witness inferred that that was a piece of paper that had been sent to Huston possibly for discount for the company; that he did not know that it was a piece of paper that Huston had offered to him before; that Huston told him he had secured authority to discount that piece of paper for himself; that when Huston told him he had secured authority to discount the paper and apply the proceeds to his own purposes, and requested witness to discount it as a personal favor, he did so; and that he supposes he knew Huston intended to apply the proceeds to his own use. In addition to this, the testimony of Fuller, Shober and Roche was taken, showing that Huston was only an agent for the company for the purpose of having the notes discounted and remitting the proceeds to the company, that the individuals, whose names were on the back of the note, had not placed their signatures there as joint makers or guarantors but simply as endorsers, and that Huston had procured for them the discountiong of some notes and had remitted the proceeds.

The defendants pleaded *nil debet* and filed a special plea, averring the agency of Huston, notice thereof to the bank, Huston's purpose and intent to keep and apply the proceeds of the note to his own use, and full notice and knowledge on the part of the bank, of said purpose and intent, at and before the time the note was discounted. Plaintiff offered only the note and notice of protest as evidence. Then, after defendant's evidence aforesaid had been introduced, plaintiff moved the court to exclude it and the motion was sustained, and the defendant excepted. Under the direction of the court, the jury found for the plaintiff, a motion to set aside

the verdict was overruled, an exception was taken and judgment was then rendered for the plaintiff.

The vital inquiry here is whether the bank is a *bona fide* holder of the note, and this involves consideration of legal principles governing commercial paper, including certain branches of the law of agency which enter into the law of negotiable instruments, and are applicable to dealings and transactions therein.

Owing to the peculiar nature of such paper, possession of it is evidence of title thereto in the possessor. In the absence of knowledge that the title of the person in whose possession such paper is found is defective or invalid for any reason and of such facts, importing want of title, as cannot, in the exercise of fairness and good faith, be ignored, one who purchases from the holder acquires a good and indefeasible title thereto, however defective the title of the transferrer may have been, provided a valuable consideration was paid, the note was not over due when purchased and the purchase was made in the ordinary course of business. Daniel Neg. Instr. section 769*a*. "The possession of a bill or note which is payable to bearer or indorsed in blank is *prima facie* evidence of ownership, and also that the holder received it upon a valuable consideration, paid therefor in the usual course of trade or business." *Bank* v. *Simmons*, 43 W. Va. 79. "The well established rule of law is, that a *bona fide* holder of negotiable paper, who purchased it for value in the ordinary course of business before maturity and without notice of facts, which impeach its validity between antecedent parties, has title thereto unaffected by such facts and may recover on such note, although as between such antecedent parties it is without validity." *Bank* v. *Johns*, 22 W. Va. 520, 524; *Goodman* v. *Simmons*, 20 How. (U. S.) 343.

That there was, in this instance, a purchase in the usual course of business and for a valuable consideration is undeniable. These requisites in the transaction are not disputed. But it is denied that the purchase was *bona fide*, and this defense is predicated upon the knowledge of the bank that the person from whom the purchase was made held the note as agent of the maker for the purpose of discounting it for the benefit of the latter and remitting to him the proceeds thereof, and the further fact that it purchased the note with

knowledge of intent on the part of the agent to convert the avails of the note to his own use in violation of the trust.

The settled law of the country now is that, despite suspicion of defect of title or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker, at the time of the transfer, a party who takes a negotiable instrument before it is due for a valuable consideration, without knowledge of any defect of title, and in good faith, obtains a good and indefeasible title thereto. *Murray* v. *Lardner*, 2 Wall. 110, 121; *Goodman* v. *Harvey*, 4 Ad. & E. 870; *Goodman* v. *Simonds*, 20 How. 343; *Bank* v. *Neal*, 22 How. 96; *Swift* v. *Tyson*, 16 Pet. 1. Mere suspicion of want of title in the seller, arising out of knowledge of circumstances, calculated to excite such suspicion will not affect the title of the purchaser, nor will gross negligence on his part have such effect. He must have knowledge or the equivalent of knowledge—such notice as makes it his duty to ascertain the truth.

In such case a purchaser, because of his ignorance of vice in the paper or title of the holder, has a better position in respect to it than the person from whom he purchased occupied. He obtains a better title than his vendor had, and he may do this without making any inquiries as to how or when his vendor obtained it. The circumstances under which the paper is presented may be such as excite suspicion as to the validity of the title; the holder may be an entire stranger; he may be such a person as would be deemed not likely to be the holder of such paper in his own right; it may be known to the purchaser that the holder is an attorney or a broker or a person of any other character who is in the habit of handling such paper as a mere agent and not as the owner; yet, a valid purchase may be made from him without any inquiry as to whether the paper belongs to him or how he came by it, provided the purchaser does not know he has no title, or such facts, indicating want of title, as are sufficient to put him on inquiry. 9 Cyc. 956; *Bank* v. *Belting Co.*, 148 N. Y. 628; *Greeneaux* v. *Wheeler*, 6 Tex. 515. Daniel on Negotiable Instruments, at section 796, deduces from the authorities the following as the correct rule by which to determine the character of the circumstances, knowledge of

which will defeat the title of the purchaser: "The circum-
stances must be so pointed and emphatic as to amount to
proof of *mala fides* in the abstinence of inquiry, or such as
to be *prima facie* inconsistent with any other view than that
there is something wrong in the title, and thus amount to
constructive notice. In other words, we would say that if
the circumstances are of such a character as to create such a
distinct legal presumption and *prima facie* proof of fraud,
or of some equity between prior parties, it would operate as
legal information and constructive notice to the transferee.
This rule fixes a criterion for judgment which is definite, and
seems to us the one which should be adopted." In support
of his text the author cites a large number of authorities
which seem to fully sustain his position.

The basis of the defense here, however, may fall within a
different principle. The defect in the title was admitted in
the first instance by the holder himself. When the note
was first presented for discount, he made no claim of title.
On the contrary, he frankly stated that it was the property
of the maker and had been entrusted to him as agent for the
purpose of having it discounted, and thereby destroyed the
presumption of title which arose from his possession of the
note. Where there is express notice of want of title, there
is no occasion for reliance upon mere known circumstances
from which want of title might have been, and, in the exer-
cise of good faith, ought to have been, inferred. "In order
to stand upon a better footing than his transferrer, the holder
must acquire the instrument without notice of fraud, defect
of title, illegality of consideration, or other fact which im-
peaches its validity in his transferrer's hands; and the word
'notice' in this connection signifies the same as knowledge.
Knowledge of fraud or illegality impeaches the *bona fides* of
the holder, or at least destroys the superiority of his title,
and leaves him in the shoes of his transferrer." Daniel Neg.
Instr. section 789. "It is quite certain that if the notice or
knowledge of the transferrer's defective title be express, it
will destroy the purchaser's better position; for if he is actually
informed of the infirmity—as when he is told by the maker
that it is without consideration, and that it will not be
paid—he errs willingly if he perseveres in negotiating for
the paper, and has no claim whatever for peculiar protec-

tion." *Id.* section 795. An illustration of this principle is found in *Norvell* v. *Hudgins*, 4 Munf. 496, in which a maker of a note was permitted to show, against the assignee thereof, by way of defense, that, before the plaintiff had paid any consideration for it, the defendant had notified him not to take it or to pay anything for it, because it had been made without any consideration, as a mere accommodation note and that the maker would not pay it. In *Hanauer* v. *Jones*, 12 Wall. 342, recovery on negotiable notes was defeated by showing that the holder purchased them with knowledge that the consideration thereof was the purchase money of goods sold in aid of the rebellion or sold with knowledge that they were purchased for the Confederate States government. In *Casson* v. *Smith*, 8 Wend. 437, recovery was defeated by proof that the note sued on had been endorsed for the accommodation of the maker, with the view of having it discounted at a bank and the avails applied to the payment of certain demands, for which a third person stood bound as surety for the maker, and had been delivered to the surety, who, with knowledge of all the facts, had offered it for discount at the bank, where discount thereof had been refused and where, at the request of the surety, it had been protested when due. For further illustrations see *Skilding* v. *Warren*, 15 Johns. 270; *Bank* v. *Myer*, 6 Serg. & Rall, 537; *Ryland* v. *Brown*, 2 Head (Tenn.) 270; *Braly* v. *Henry*, 71 Cal. 481; *Crampton* v. *Perkins*, 65 Md. 24; *Smith* v. *Bank*, 74 Tex. 458; *Mace* v. *Kennedy*, 68 Mich. 389; *McNamara* v. *Gargett*, 68 Mich. 454; *Bank* v. *Edholm*, 25 Neb. 742; *Joy* v. *Diefendorf*, 130 N. Y. 6; *Farthing* v. *Dark*, 11 N. C. 243.

Though the bank was thus affected with notice of the status of the paper offered and of the nature of the holder's title and his powers and duties respecting it, a good title might have been acquired but for what subsequently occurred. Had not Huston admitted his agency, the bank would have been justified in dealing with him as the owner of the paper, because, for aught that appeared on the face of it, he was the owner. After his admission of the fact of his agency, he could still have passed title to the bank as agent and received the money no doubt, and the bank would not have been responsible for a subsequent misappropriation thereof. *Arno* v. *Bank*, 18 S. R. 786; *Shattuck* v. *Eldridge*,

173 Mass. 165. But, under the general principle hereinbefore adverted to, knowledge of the fact that Huston held the paper as agent only, precluded dealings with him in respect to it on the basis of title or ownership in him. It is difficult to conceive of a method, by which notice may be acquired, more effectual than the admission of the party himself of his want of title. It is a declaration against interest and to be taken strongly against him. Had the principal notified the bank of the fact of agency, no one would hesitate to say such notice would have precluded dealings with the agent as the owner. But this would not have been conclusive. The holder might have controverted it. He might have denied that he held as agent and asserted his title to the property. His own admission of the agency was, therefore, more potent evidence of the fact than notice from the maker or some other source would have been. Knowledge of this fact made it the duty of the bank to deal with him as agent only and it was bound, at its peril, to know the extent of his powers as agent. "If the agency of the party is made to appear, the principal will not be bound beyond the authority given. And, where the holder has notice that the party acting as agent is such, he is bound to inquire into his authority." Rand. Com. Paper, section 388; *Curry v. Hale*, 15 W. Va. 867. This principle, however, so far as it relates to the power of the agent to pass title and receive the money, in the absence of any misconduct on his part, is unimportant, for the reason that it does not appear that any limitation had, in fact, been imposed upon his powers in this respect. He was authorized to sell the paper and bound to account for its proceeds. Power of sale, in the absence of any limitation, embraces the power to receive the proceeds and the bank could have paid the money into his hands or placed it to his credit. These propositions are not controverted.

The trouble arises out of the disclosure made by the agent on his second application to the bank to discount the note. On this occasion he represented, not that his agency had ceased, or that the paper belonged to him, but that he had secured authority to use the proceeds of the note, and, in view of that situation, he requested the bank to take it as a matter of personal accommodation to him, and it did so. His agency had not, at that time, been revoked. He was, in fact, still

agent, but was either attempting to repudiate his character as such or to pervert his agency to purposes other than the business of his principal, for which alone it was created, and to make it subserve his own personal ends. Of this the bank, by its own admission, had notice; but it takes the position through its counsel here that, as Huston's title, tested by the the paper itself, was complete and absolute, his verbal representations were immaterial and might be disregarded. The argument is that, as he held the paper, his possession of it was not only *prima facie* evidence of title, but authorized him to dispose of it for any purpose he saw fit, despite his admission of title as agent only. Having admitted the agency on a prior occasion, he might withdraw that and make any other representation he might wish to make and the bank would be justified in relying upon it. Whether such latitude on the part of an agent handling negotiable paper is allowed must be determined, if possible, from the general principles of law to be deduced from the decided cases and gathered from juridical opinion expressed by the courts and law writers.

In taking this position, counsel assume that the note, with its endorsements, constituted the evidence of the authority of the agent, and was the equivalent of a power of attorney, authorizing any disposition of the note which the agent might see fit to make, even the conversion of it to his own use, and that the limits of his powers being thus defined and presented to the party with whom he was dealing, any declaration to the effect that the agency was more limited in character than it appeared to be did not preclude him from afterward asserting and exercising his authority to the full limits of its scope. If it be true that the note in the hands of the agent constituted a power of attorney, no reason is perceived why he might not be permitted to exercise all the powers conferred by it, no matter what declarations he might make as to the character of the agency. An agent, having in his possession notes of his principal indorsed in blank, may sell them or pledge them for his own debt to one who has no notice of the fact of agency. *Stutzman* v. *Payne*, 23 Ia. 17. Accepted bills of exchange drawn on the principal by his agent and made payable to the order of the agent, to the end that he may have them discounted for the benefit of the principal,

may be pledged by the agent to. secure borrowed money for his own use, provided the pledgee has no notice of the agency. *Clement* v. *Leverett*, 12 N. H. 317. A bank having in its hands for safe keeping and for no other purpose, negotiable bonds of its customer, may pledge them to an innocent party. *Ringling* v. *Kohn*, 4 Mo. App. 59. A broker having notes of a customer in his hands for sale for the benefit of his principal, may pledge them for his own debt to one who has no knowledge of the character of the holding. *Giovanovich* v. *Bank*, 26 La. Ann. 15. Bankers to whom bills are pledged for the loan of money, may re-pledge them to a third person, if the person who takes them from the bank has no notice of the character in which they are held. *Collins* v. *Martin*, 2 Esp. 520. An agent, having in his possession a negotiable note belonging to his principal, may make a binding transfer of it to an innocent third party. *Ogden* v. *Marchand*, 29 La. Ann. 61, In all these cases, the fact of agency existed, and cases of this class are discussed in Randolph on Commercial Paper, at section 391, under the head of Agency, and it is there said that "The *bona fide* holder of such an instrument is not subject to any defense arising out of the agent's fraud or want of authority." It is to be observed, however, that in none of these cases was the fact of agency known to the purchaser of the note. He did not deal with the holder on the basis of agency or with knowledge of any agency. He dealt with him as the owner of the paper. Nor is this relation of the parties ignored by Mr. Randolph, for he says in the same section, "From these cases the rule may be laid down that possession carries with it presumptively the ownership and power to dispose of negotiable paper, payable to bearer or indorsed in blank." To this proposition, he adds the one previously quoted from the same section as a consistent. and sequential one. When the party has possession of the paper and neither the fact of agency nor any other circumstance inconsistent with title in the holder is known to the other party, he may deal on the basis of ownership although there is in fact an unknown agency. He may take good title despite this indisputable fact of which he has no knowledge. These cases furnish no authority for the position that the note is the equivalent of a power of attorney. Ownership of the note and possession thereof in the capacity of agent, are

inconsistent things. Ownership includes of course all powers of control and disposition. Agency is no part of this but is a new and distinct thing which the owner may create out of it and in respect to it. If the holder is the owner he cannot be the agent of himself because his agency is merged in his ownership. Had the fact of agency been known in any of these cases, it would, therefore, have negatived the possibility of ownership in the holder and no dealings could have been had with him on the basis of ownership. Knowledge of the fact of agency destroys the apparent title of the holder and the intending purchaser must then look to the authority of the agent. That one having possession of negotiable paper has only *prima facie* title, has been demonstrated by cases already cited, relating to accommodation paper. The same principle certainly allows a man to part with a title by admission which can be defeated by proof. The note cannot be considered a power of attorney, giving such authority as is claimed, for the power would run into ownership, a status which negatives the character of agency, necessarily.

"If the agency of the party is made to appear, the principal will not be bound beyond the authority given. And, where the holder has notice that the party acting as agent is such, he is bound to inquire into his authority." Rand. Commer. Paper section 388. The maker by constituting the agency and intrusting the note to the agent in such form that it might be disposed of by mere delivery, held the agent out to the world as possessing power to pass the title to it. Upon the apparent authority with which the principal had thus clothed the agent, persons dealing with the latter might rely, if they had no notice of any limitation, upon such authority. "Private instructions to a general agent circumscribing his power will not avail to shield the principal from liability to parties dealing with him in ignorance of the limitation. But if such persons are aware of the instructions the principal is not bound." 1 Am. & Eng. Ency. Law (2d Ed.) 994. "A principal may confer as much or as little authority as he sees fit upon his agent, and he may also impose such lawful restrictions and limitations upon his agent as he may deem proper, and such restrictions and limitations will be as binding upon third persons who had notice of them, as upon the

agent himself, provided the principal does nothing to waive them." *Lead Pencil Co.* v. *Wolfe*, 30 Fla. 360. The law does not permit an agency to be loaded down with secret instructions inconsistent with the authority actually or apparently conferred, but if a stranger dealing with the agent knows of the limitation, he has no cause for complaint, and, in this respect, there is no difference between a general and a special agency. 1 Am. & Eng. Ency. Law (2d Ed.) 994, 995. "If limitation of the agent's authority is public, or known to the person with whom he deals, the principal will not be bound if the agent exceeds his authority; but if such limitation be private, the agent may bind his principal, although the former exceed his authority." *Bryant* v. *Moore*, 26 Me. 84, (45 Am. Dec. 96). "If the shipper of goods on freight contracts for the price thereof with the general agent of the owner of the vessel, having reason to know, that although his agency might be general, yet that his authority was restricted in that particular instance, the shipper cannot claim to have the terms of the contract fulfilled as against the principal of such agent." *Barnard* v. *Wheeler*, 24 Me. 412. The difference between general and special agencies in the law of commercial paper is stated in Daniel on Negotiable Instruments, at section 278, as follows: "Where the agency is specially given to do a particular thing, the agent is circumscribed within the limits of actual authority; but where the agency is general—as that of a bank cashier, for instance—all acts within the scope of that general authority are binding on the principal." On the subject of limitation of authority, this work says, in the next sentence, "And if he seeks to avoid liability, he must show not only limitation of the general authority, but also that the party dealing with the agent had notice." Under the authority conferred upon the agent in this case by placing the note in his hands, ready for delivery to a purchaser, he could have passed the title to · a purchaser who knew that he was acting in the capacity of agent. The purchaser would have been warranted in relying upon the apparent authority with which the agent was clothed, provided he knew of no limitation. *Bank* v. *Real Estate Co.*, 150 Mo. 570.

The declaration on the part of the holder, after having admitted the agency, that he had secured the right to use the

note for his own benefit, calls for the application of another principle of the law of agency, which is a limitation imposed by law upon the power of every agent, general or special, of which all persons must take notice, namely, that an agent has no power to use his office otherwise than for the benefit of his principal. When he undertakes to exercise it for a purpose which can in no way benefit his principal, but will benefit himself or some third person, he places himself in a position in which the law determines that he is outside of the scope of his agency and the person who deals with him in such position will not be heard to say he was in ignorance of the want of authority, for ignorance of law excuses no man. It is of the very essence of an agency that it shall be used for the benefit of the principal. Men appoint agents to subserve their interests, carry on their business, preserve their property, and not for the purpose of giving it away to others and converting it to their own use. "If one who is known to be an agent for the negotiation of his principal's draft, transfer the draft to a third person in payment of the agent's debt, that person will acquire no title to the draft, however honest his actual intention may be. The declarations of an agent, although accompanying his acts, constitute no evidence of the extent of his authority.      *      *      *.      *      If a transaction between an agent and another person be entire, and be known to such other person to be a breach of trust on the part of the agent, the principal is not bound at all, although some portions of the transaction might, if standing alone, have been within the agent's power and duty." *Dowden* v. *Cryder*, 55 N. J. L. 329. The reasons underlying these legal propositions are stated in the opinion in the case just cited as follows: "It is a universal principle in the law of agency that the powers of the agent are to be exercised for the benefit of the principal and not of the agent or third parties. Persons dealing with one whom they know to be an agent and to be exercising his authority for his own benefit, acquire no rights against the principal by the transaction. Such a transaction is usually and perhaps properly spoken of by the courts as fraudulent, but, however honest the intention of the parties, the agent's act is invalid merely because the circumstances known to both prove it to be *ultra vires*." Tiedman on Commer. Paper, section 92, says: "It is implied in every

agency, in the absence of express evidence to the contrary, that the power of the agent is to be exercised for the benefit of the principal, and not for his own private advantage." This principle was applied by the Supreme Court of Virginia in *Stainbach* v. *Bank of Virginia*, 11 Grat. 269, in which, after stating the nature of the agent's powers, the court held as follows: "A party dealing with the agent, with knowledge or means of knowledge that under such a power he is endorsing the name of his principal for his own benefit, is not entitled to recover from the principal." In *Stainer* v. *Tysen*, 3 Hill (N. Y.) 279, the rule is declared in this language: "The naked power to do acts for and in the name of the principal, negatives all authority on the part of the attorneys to act for the benefit of any one besides the principal; and persons dealing with the attorney, as such, are bound to notice this limitation." Other cases illustrating the rule are *Bank* v. *Aymar*, 3 Hill (N. Y.) 262; *Suckley* v. *Tunno*, 1 Brev. (S. C.) 256; *Holden* v. *Durant*, 29 Vt. 184; *Odiorne* v. *Maxey*, 13 Mass. 178; *Bank* v. *Studley*, 1 Mo. App. 260. Most of these are cases in which the agent pledged or sold the paper in payment of his own debt, so that the third party dealing with him derived a peculiar benefit from the unauthorized transaction. This, however, does not seem to be the reason for denying validity of title in such purchaser. It seems to stand upon the want of authority in the agent to exercise his powers for his own benefit or for the benefit of anybody except his principal. Knowledge of this perversion of authority on the part of the purchaser is necessary to the invalidity of his title, of course. But when he does have such knowledge, he is bound to know the want of authority in the agent to so use his powers. In the case of *Dowden* v. *Cryder*, the purchaser was not a creditor of the agent. He took the draft in exchange for $2,060.00 in cash and a diamond necklace valued at $1,100.00. There was no advantage in the transaction to the purchaser except a possible profit on the necklace and the discount of forty dollars allowed. In *Trust Co.* v. *Abbott*, 4 N. J. L. 257, the agent held a power of attorney, authorizing him to sign the principal's name to any paper or papers, notes, &c. He drew a note in his own favor and signed the principal's name by himself as agent and sold it to the defendant.

In the action on the note, the court held that the power did not justify the signing of such documents as were described in it for purposes outside of the principal's business and that the burden was upon the plaintiff to show that he was a *bona fide* holder, for value, before maturity. In stating the reason for the rule, the court said: "But in whichever form the instrument was delivered, it did not justify the signing of notes for purposes outside of the principal's business. The note in suit was not given for such a purpose, but was put forth for the personal benefit of the attorney, who converted its proceeds to his own use. It was therefore issued under an apparent authority, but in fraud of the principal." The court reversed the judgment in favor of the plaintiff because the evidence did not show when, from whom, and under what circumstances, the attorney had received the money. The same principle was enunciated and applied by this Court in *Rohrbough* v. *Express Co.*, 50 W. Va. 148. See also *Express Co.* v. *Trego*, 35 Md. 47. This is a heavy penalty to visit upon the bank, but nothing worse than would have befallen it had any other limitation upon the agent's power been disregarded. Other instances of such penalties, consequent upon non-observance of legal rights, are to be found all along the beaten highway of the administration of the law. Take one who pays full value for property, knowing the sale is made to defraud creditors. He loses everything, while, if the same sale had been made to a person ignorant of the intent, it would have been valid.

On the basis of an assertion of title to the note and repudiation of the agency, by the representation of right to use the money, the case stands no better. If Huston had no title under the paper, taken in connection with his former representation of agency, the bank had no right to rely upon his mere verbal assertion of title. Title to property cannot be acquired in that way. Having knowledge of a fact, sufficient to put it upon inquiry, at least, the admission of agency, the bank was bound to make a proper inquiry, and this requirement could not be satisfied by an inquiry directed to the party whose interest it would be to misinform as to, and deny, the very fact sought for. 7 Cyc. 942; *Carter* v. *Lehman*, 90 Ala. 126.

For the error of the court in excluding the defendant's evidence and directing a verdict for plaintiff, the judgment must be reversed, the verdict set aside, and a new trial allowed and the case remanded.

*Reversed.*