(January 31, 1914.)

## CARSTENSEN & ANSON COMPANY, a Corporation, Appellant, v. G. G. WRIGHT, Respondent.

[138 Pac. 830.]

CONTRACT—CLAIM AND DELIVERY—CONSTRUCTION OF CONTRACT—NOTE—
INNOCENT PURCHASER.

1. Where a contract is entered into between a corporation with its place of business in Salt Lake, Utah, and E. C. Howard, doing business under the name of the Howard Music Company, and the court's findings and the record show that he used the name "Howard Music Company" as a business name, when there was no such company, but that Howard was the party who sold the piano under this contract and took a note for it, and offered the note for sale; and afterward the party to whom the note was offered to be sold, being the respondent, refused to buy it and did not receive it, but demanded a new note, and the note was returned to Howard and the demands of Wright were complied with under a contract between Howard and Beasley with the purchaser, the respondent, and a new note in proper form that Wright would buy was executed, for which he paid the sum of $400, such contract was valid, and the consideration was a sufficient consideration for the execution of said note.

2. The rule of law governing a transaction as to the dealing with the holder of the legal title by an innocent purchaser is, that where the owner of a negotiable instrument clothes another person

with the apparent legal title to the instrument, such person so clothed with the apparent legal title may sell and dispose of the instrument to an innocent person for value without notice of the right of the real owner, in the same manner as though he were the real owner.

3. Sec. 3654, Rev. Codes, provides: "A non-negotiable written contract for the payment of money or personal property may be transferred by indorsement, in like manner with negotiable instruments. Such indorsement transfers all the rights of the assignor under the instrument to the assignee, subject to all equities and defenses existing in favor of the maker at the time of the indorsement."

4. The rule of law applicable in this state is, that the rights of innocent parties do not depend upon the actual authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power, which through negligence or mistaken confidence he caused or allowed to appear to be vested in the party making the conveyance.

5. It is shown by the record and the evidence in this case that the original contract note after the sale by Howard to Beasley was canceled, by request of Howard, and a new note given in lieu thereof, and the original note given and left with Howard was delivered to Beasley, and Beasley obligated himself upon a new note held by Wright, and Beasley gave the note believing that the piano he had bought belonged to Howard, and that the original note belonged to Howard, and without having any knowledge or notice that the appellant company had any interest whatever in the piano or note, and that the sale was made to Wright, and representations were never made to Wright that there was any defect or failure in the title to said note either in Howard or Beasley, and that such evidence was competent, and with other evidence in the case established that Wright was an innocent purchaser, and that the court was justified in rendering judgment for the respondent.

APPEAL from the District Court of the Ninth Judicial District for the County of Bonneville.    Hon. James G. Gwinn, Judge.

An action of claim and delivery and for wrongful detention, and in a second cause of action praying that the second note be declared void and that any lien or claim thereunder

be annulled and that respondent produce the note and deliver it up to be canceled.  Judgment *affirmed.*

W. P. Hanson, for Appellant.

The original note or contract is a non-negotiable instrument, and is governed by the same rules of law as any other chattel; the mere possession of personal property of itself does not carry with it the right of the holder to dispose of it. (*Smith-Premier Typewriter Co. v. Stidger,* 18 Colo. App. 261, 71 Pac. 400; *Levi v. Booth,* 58 Md. 305, 42 Am. Rep. 332.)

If the seller had no title to the note he could transfer none, and good faith of respondent could not affect the title. (*Chism v. Wood,* 1 Hard. (Ky.) 531, 3 Am. Dec. 740.)

Respondent knew that Howard had no right to negotiate the original note, and having grounds to believe the agent had no right to sell, could obtain no title, and was guilty of conversion. (*White Sewing-Machine Co. v. Betting,* 46 Mo. App. 417.)

Money or property intrusted with an agent, for a particular purpose, is impressed by law with a trust in favor of the principal until it has been devoted to such purpose, and when it has been wrongfully diverted by the agent, such trust generally follows the fund or property in the hands of a third person, and the principal is entitled to follow it and recover it as long as it can be identified, and he can retake it even in the hands of an innocent third party, since the agent can give no title when he has none. (31 Cyc. 1606; *Pearce v. Dill,* 149 Ind. 136, 48 N. E. 788; *Riehl v. Evansville Foundry Assn.,* 104 Ind. 70, 3 N. E. 633; *Robards v. Hamrick,* 39 Ind. App. 134, 79 N. E. 386; *Roca v. Byrne,* 145 N. Y 182, 45 Am. St. 599, 39 N. E. 812; *Wells v. Robinson,* 13 Cal. 133; *Barnard v. Campbell,* 58 N. Y. 73, 17 Am. Rep. 208; *Saltus v. Everett,* 20 Wend. (N. Y.) 267, 32 Am. Dec. 541; *Levi v. Booth,* 58 Md. 305, 42 Am. Rep. 332.)

Everyone is bound at his peril to ascertain in whom the real title is vested, and no matter how much diligence he may exert to that end, he must abide the consequences of his own mis-

take. (*Velsian v. Lewis,* 15 Or. 539, 3 Am. St. 184, 16 Pac. 631; *Gilmore v. Newton,* 9 Allen (Mass.)͂ 171, 85 Am. Dec. 749; *Spraights v. Hawley,* 39 N. Y. 141, 100 Am. Dec. 452; *Hotchkiss v. Hunt,* 49 Me. 213.)

Mere possession affords no evidence that the person having it has a right to sell it, and he who purchases or intermeddles with it must see to it that he is protected by one who has authority. (*Velsian v. Lewis, supra; Spraights v. Hawley, supra; Cooper v. Newman,* 45 N. H. 339; *Dixon v. Caldwell,* 15 Ohio St. 412, 86 Am. Dec. 487.)

St. Clair & St. Clair, for Respondent.

In an action of claim and delivery the appellant must recover upon the strength of his own title and not upon the weakness of his adversary's title. (*Wilkins v. Wilson,* 1 Marv. (Del.) 404, 41 Atl. 76; *Gallick v. Bordeaux,* 31 Mont. 328, 78 Pac. 583; *Herman v. Kneipp,* 59 Neb. 208, 80 N. W. 816.)

Where the owner of a non-negotiable note, or any non-negotiable instrument, clothes another person with the apparent legal title to such instrument and the possession thereof, such other person, so clothed with the apparent legal title, may sell and dispose of the instrument to an innocent purchaser for value without notice of the rights of the real owner, in the same manner as though he were the real owner. (Idaho Rev. Codes, sec. 3654; *Boon v. Weathered's Admr.,* 23 Tex. 675; *McNeil v. Tenth Nat. Bank,* 46 N. Y. 325, 7 Am. Rep. 341; *Cowdrey v. Vandenburgh,* 101 U. S. 572, 25 L. ed. 923; *Merchants' & Mfg. Nat. Bank v. Ohio Valley Furn. Co.,* 57 W. Va. 625, 50 S. E. 880, 70 L. R. A. 312; *Combes v. Chandler,* 33 Ohio St. 178; *Salter v. Baker,* 54 Cal. 140; *DuBois v. Perkins,* 21 Or. 189, 27 Pac. 1044; *Argenti v. Brannan,* 5 Cal. 351; *Lumley v. Corbett,* 18 Cal. 494; 35 Cyc., tit. "Sales," subds. j, k, 357, 363.)

STEWART, J.—The complaint in this case alleges two causes of action, one for claim and delivery in the usual form for the recovery of the original contract note and for dam-

ages for the wrongful detention of the same. The second cause of action alleges the conditions under which the note was obtained and that by virtue of the same the respondent claims some interest in or title to the property described in the first cause of action, and that such claim was without right and that there was no consideration for said note. It is alleged in the complaint that the plaintiff herein is the owner of the original note and that the defendant has no interest, right or title to the same; that said note, now held by the defendant wherein he claims title to said piano described as "One Brentwood style player," was given for the original sale contract described in the complaint in the first cause of action, and that defendant's claim or lien upon said piano is without right and that he has no interest or title to said piano of any nature or kind. The prayer of the complaint was that the original note be surrendered to plaintiff, the appellant, and that the second note be declared void and that any lien or claim thereunder be annulled, and that the respondent produce said note and deliver it up to be canceled, and for costs.

The respondent put in issue the ownership of the original contract note and denies that on or about the 7th of December, 1912, in the county of Bonneville, he wrongfully came into the possession of said contract or note from the possession of the plaintiff, or that he ever at any time or place wrongfully came into the possession of said note or contract; but the defendant admits that on or about the 7th of December, 1912, he came into the possession of said note or contract without the consent of plaintiff, and admits that on or about January 10, 1913, plaintiff demanded of defendant the surrender of said note or contract and all rights which the defendant claimed under and by virtue of the same, and admits the defendant refused to deliver possession thereof to the plaintiff; and denies that he still or at all unlawfully withholds or detains said note or contract from the possession of the plaintiff, and denies that the plaintiff has been damaged in the sum of $200 or in any other amount whatever.

The complaint alleges that the second note was given for the first note, and that Wright well knew at the time he received the title note now held by him that the same was executed by the said A. H. Beasley for and in consideration of the original conditional sale note being canceled and annulled, and he testified that he delivered it up and that it belonged to Mr. Beasley.

The defendant alleges that on the 7th of December, 1912, one E. C. Howard, doing business in the name of the Howard Music Company, offered to sell the said note or contract involved in this case to this defendant, and that the defendant, because of objections to the form of the note, refused to purchase the same, and the defendant alleges that he informed Howard that if *he* would secure a title note for the said piano, described in the contract, payable to the order of himself individually from A. H. Beasley, that he would purchase such new note or contract, and that on December 7, 1912, Howard did obtain from Beasley a title note or contract for the piano, payable to the order of Howard; that Howard offered to sell said new note to this defendant and the defendant says that on that date he purchased said note from Howard. Evidence is offered to show that the defendant and respondent never claimed any lien upon the piano and no interest or title to said piano of any nature or kind.

Exhibit "A," which is in the record, being the agreement between the appellant and the Howard Music Company, is to the effect that "all notes, contracts and leases taken in the sale of said goods shall be a lien on the instrument sold, made on second party's blanks, payable to them."

The foregoing allegations of the complaint are a statement of the facts in this case, and these facts are agreed to by counsel on both sides, as shown by their briefs, and were also agreed to upon the oral argument.

It was shown by the record and the evidence of Wright that Wright objected to buying the original note from Howard for the reason that the note showed on its face that it was payable to the Howard Music Company, and that an agent was not authorized to indorse or transfer the contract, and

that Wright did not know Howard, and Wright was of the opinion that Howard could not sell the original note, but that if Howard could get Beasley to sign a new note and Beasley would come to Wright and say that the matter was straight and that the piano had been delivered, that he would buy the new note, and the evidence of Beasley shows that Beasley told Wright that he had made the purchase and thought it was all right, and he was willing to give a new note so that Howard could dispose of such new note to Mr. Wright. Afterward the transaction was closed by Beasley's giving the new note in lieu of the old, which was canceled, and the record shows that Howard indorsed the new note, which was payable to his individual order, and delivered it to Mr. Wright, and received therefor the sum of $400 from Wright.

There can be no question in this case but that the above record shows clearly that the transaction was in the usual course of business generally, and that Wright investigated the matter as fully as he could and did arrive at the conclusion that the transaction was a fair and straight transaction in the general and proper course of business and involved the sale of a negotiable note which was indorsed, and that Wright satisfied himself that there was no fraud in substituting the second note for the original. The evidence shows that Howard was in fact the Howard Music Company, and that the Howard Music Company was the name under which Howard was making the contract, and doing it for the purpose of advertising the Howard Music Company, which Howard was carrying on. Under such circumstances it was clearly shown that a conclusion could not be established under the facts and record in this case that Howard could not transfer the note because of its form, and that for that reason it should be returned, and that Wright did not purchase it; but the evidence does show that a new note was executed to Howard, and that such note was negotiable by an indorser, and that it was transferred to Wright by the method generally adopted in selling and indorsing a note, without any notice of any fraud or improper acts.

The first cause of action is one of claim and delivery, and it is claimed by Wright that the original note was surrendered and canceled in consideration of the giving of the new note, and from these facts it is clearly shown that the original note is made an issue by the pleadings, and the evidence shows that the original note belonged to Beasley, and not the appellant.

Under the general rule of law that the courts recognize in an action of claim and delivery, the appellant in this case is compelled to recover upon the strength of his own title and not upon the weakness of Wright's or Howard's or the Howard Music Company's or the weakness of Beasley's title. (*Gallick v. Bordeaux,* 31 Mont. 328, 78 Pac. 583; *Herman v. Kneipp,* 59 Neb. 208, 80 N. W. 816; *Wilkins v. Wilson,* 1 Marv. (Del.) 404, 41 Atl. 76.)

In the case of *Gallick v. Bordeaux, supra,* the supreme court of Montana announces the rule in that state as follows: ''In an action in claim and delivery plaintiff must recover upon the strength of his own title, and not upon the weakness of defendant's title.'' The other cases cited adopt the same rule.

It is shown that the original contract was canceled by request of Howard by agreement between him and Beasley, and the new note given in lieu thereof, and the original note given and left with Wright was delivered to Beasley, and Beasley obligated himself upon a new note held by Wright, and Beasley gave the note believing that the piano he had bought belonged to Howard and that the original note belonged to Howard, and without having any knowledge or notice that the appellant company had any interest whatever in the piano or note. The rule of law governing such transaction as to the dealing with a holder of the legal title by an innocent purchaser is, that where the owner of a non-negotiable instrument clothes another person with the apparent legal title to the instrument, such person so clothed with the apparent legal title may sell and dispose of the instrument to an innocent person for value without notice of the rights

of the real owner in the same manner as though he were the real owner.

Sec. 3654, Rev. Codes, provides as follows: "A non-negotiable written contract for the payment of money or personal property may be transferred by indorsement, in like manner with negotiable instruments. Such indorsement transfers all the rights of the assignor under the instrument to the assignee, subject to all equities and defenses existing in favor of the maker at the time of the indorsement."

In the case of *Boon v. Weathered's Admr.*, 23 Tex. 675, the supreme court of Texas held in effect that where an agent violates the instructions of his principal and procures a certificate to be issued to him instead of his principal, and transfers such certificate to an innocent purchaser, as to the third person not proved to have had notice of the interest of the principal, and who purchased for value, the agent would be regarded as the true owner of the certificate.

In the case of *McNeil v. Tenth National Bank*, 46 N. Y. 325, 7 Am. Rep. 341, the plaintiff, as the owner of a certificate of stock in a bank, indorsed the same and left it with his brokers as security. The brokers without authority deposited the certificate as collateral security to their own debt. The court of appeals held that where the owner of property confers upon another an apparent title, or power of disposition over it, he is estopped from asserting his title as against an innocent third party, who has dealt with the apparent owner in reference thereto without knowledge of the claims of the true owner.

The supreme court of the United States approves this latter case in the case of *Cowdrey v. Vandenburgh*, 101 U. S. 572, 25 L. ed. 923, and quotes with approval the following excerpt from the McNeil case:

" 'The rights of innocent third parties,' as the court there observes, 'do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power which, through negligence or mistaken confidence, he caused

or allowed to appear to be vested in the party making the conveyance.' ''

Many other cases are found which sustain this rule, a few of which follow: *Merchants' & Mfg. Nat. Bank v. Ohio Valley Furnt. Co.,* 57 W. Va. 625, 50 S. E. 880, 70 L. R. A. 312; *Combes v. Chandler,* 33 Ohio St. 178; *Salter v. Baker,* 54 Cal. 140; *DuBoise v. Perkins,* 21 Or. 189, 27 Pac. 1044; *Argenti v. Brannan,* 5 Cal. 351; *Lumley v. Corbett,* 18 Cal. 494; 35 Cyc., tit. ''Sales,'' 357–363.

The record in this case shows that by this transaction the appellant company clothed Howard, who did business under the name of the Howard Music Company, which was the same thing as shown by the pleadings, with the possession of pianos, which he could sell under the contract, and the right to take notes therefor payable to himself, and this shows that it was the intention of the appellant company to keep from people with whom Howard dealt the knowledge that the appellant had anything to do with the pianos or notes.

Exhibit ''2'' is as follows:

''December 3rd, 1912.

''Carstensen Anson Company,

   ''Salt Lake, Utah.

   ''Gentlemen: Inclosed you will find our contract #105 for the Brentwood Player #7526 sold today to Mr. A. H. Beasley, R. F. D. #3, Idaho Falls and which will be delivered there tomorrow morning. The Weber Style 11, which I did deliver to the same people I will take on with me to Shelley, Ida. if possible, and make delivery at that point.

   ''Payments on the inclosed contract will be made as per agreement and is quite likely that the total balance after Jan. 1st, 1913, will be paid inside 6 months.

   ''As per Mr. Anson's request, we are waiting for the slip, that he said he would have made and then forwarded to me and which would tend to show that these contracts of ours would be held by you, in case you should make collection thereto.

   ''We do not care to make this notice in writing on the contract, for if we ever have to force collection we do not want

it known in public that we are connected in any way with your institution, and if we did so, it would show on the contract that we were selling these special pianos for you, and it would place us in a bad light.

"Trusting that you will acknowledge receipt of the inclosures, we beg to remain,

Yours respectfully,

"HOWARD MUSIC COMPANY,

"Per E. C. HOWARD, Mgr."

This exhibit clearly shows that Howard sent the first note in without indorsement to appellant by mail, and that he called attention to the fact that Mr. Anson, one of the appellant's officers, had promised to forward to him some slips "which would tend to show that these contracts of ours [Howard's] would be held by you [appellant]," and Howard said in his letter that he would not care to make the notice in writing on the contract for the reason that "it would show on the contract that we are selling these special pianos for you, and it would place us in a bad light."

The manager of the appellant company testified at the trial upon cross-examination as follows: "Q. You were willing to assist him with these glued slips in deceiving people into thinking that they were dealing with him and his property and not with yourself, were you? A. If you want to put it that way. Q. That was the purpose of it? A. Yes, sir. Q. That was your purpose then in not having the indorsement go to you, was it not, so as to conceal your connection with it? A. No. Q. It would so conceal it, would it not? A. I presume it would. Q. He had requested that would be fixed so it would be misleading? A. Yes. Q. And you were willing to do it? A. We are always willing to help our agents sell goods." This statement of Carstensen, who was manager of the appellant company, that the appellant consented and was satisfied and willing that Howard should and could hold himself out to the people generally as being the owner of the pianos sent by appellant to Howard, and also to have Howard conceal from the people the connection of the appellant with the transaction, shows that the appellant, having intrusted Howard with the legal title to and possession of the notes,

and having intended to enable him to deal with them as his own, could not as against the respondent, an innocent purchaser of the note, be permitted to say that the note taken by Howard and canceled by him, or the note sold by him to Wright, belongs to the appellant.

It is stated in the appellant's brief that the respondent did not plead estoppel, but we understand the rule to be that it is unnecessary under the facts of this case to use the word "estoppel" in a pleading, and that it is only required to allege the facts fully and clearly constituting estoppel, and the pleadings in this case, in the answer, show all the facts necessary to create estoppel.

The appellant in this case assigns ten errors as grounds for reversing the case. These errors are so framed that many of them may be combined, and they will be considered in this opinion as presenting the same question and discussed together.

The appellant contends that the court erred as a matter of law in finding that the giving of the second note in any manner affected the appellant's right to the original note; that if the first part of the second finding be correct, then some act or acts of the appellant must have intervened to deprive it of its title and right to the note in question; that the original note or contract is a non-negotiable instrument, and is governed by the same rules of law as any other chattel, and it is a universally accepted rule of law that the mere possession of personal property of itself does not carry with it the right of the holder to dispose of it. In support of this doctrine appellant cites the case of *Smith Premier Typewriter Co. v. Stidger,* 18 Colo. App. 261, 71 Pac. 400; *Levi v. Booth,* 58 Md. 305, 42 Am. Rep. 332. These authorities are not applicable to the law as we view it upon the record and evidence presented to this court on this appeal.

There is no merit in the second assignment that the court erred in his finding that the original note was delivered up to the maker, A. H. Beasley, and canceled. We have considered this question and we find that the trial court did not err in making the finding.

It is also contended by the appellant that the court erred in finding that the note dated December 7, 1912, was sold to the respondent in due course of business. We have considered this question in this opinion, and we are satisfied that the court did not err in its finding, as a matter of law, that A. H. Beasley is the owner of the original note, and the court in this opinion has fully considered that question.

It is also contended by appellant that the court erred as a matter of law in finding that because of the mere fact that the defendant acted in good faith, paid a good and sufficient consideration for the note dated December 7, 1912, he thereby became the owner of said note, on the ground that this is not the law under the most liberal interpretation. We have considered this matter and stated the facts and issues upon that question in this opinion, and also the evidence and what was proven by the evidence.

It is also contended by appellant that the judgment is contrary to the law and is not supported by the findings or conclusions of law, and many decisions are cited in the brief upon this question, and the general rule, as stated by appellant in his brief and in his oral argument, is that a party cannot convey a better title than he himself possessed. There can be no question upon the rule as stated by the appellant that a party cannot convey a better title than he himself possessed, but in this case there is no error, and the appellant's contention that the judgment is contrary to law is not supported by the findings or conclusions. This alleged error is not supported by the record in this case, and we have discussed that question in this opinion. The appellant cites a number of authorities upon these questions, but the authorities are not applicable to the showing made in this case by the record, as we have held in this case.

Counsel for appellant discusses very ably the general rule as to a purchaser in good faith of a bailee or agent who has not authority to sell, getting no title. We have discussed and determined in this case what relation existed between the appellant and Howard and the company name used by him as a business proposition, namely, the Howard Music Com-

pany, and from that discussion it is evident there was no bailee in this case, as shown by the record, and that Howard had the right to sell and take notes for the amount either in Howard's name or in the name of the Howard Music Company, and that the relations between Howard and the appellant have been clearly stated, and also Beasley's relation with the transaction.

It is argued by appellant, and authorities are cited, that mere possession affords no evidence that the person having it has the right to sell, and he who purchases or intermeddles must see to it that he is protected by one who has authority. This question has been considered and determined in this opinion and the authorities supporting it, and this court is of the opinion that there was evidence that the person having the pianos had the right to sell them, as the evidence and the record show.

The court made findings of fact and conclusions of law in this case and entered judgment that "The two causes of action set forth in plaintiff's complaint be and they are hereby dismissed with prejudice, and that the defendant have and recover of and from the plaintiff his costs."

We have examined the several errors assigned by the appellant in this case, and we find no errors which we have not covered by the opinion or which are of such a character as would justify a reversal of the judgment. We think the trial court has found on the facts of the case, and that the court's findings are founded upon the facts and the pleadings of the case, and that the judgment should be sustained. Judgment affirmed; costs awarded to respondent.

Ailshie, C. J., and Sullivan, J., concur.