PHILIP RINGLING, Respondent, *v.* DAVID KOHN ET AL., Appellants.

### May 15, 1877.

1. United States "five-twenty" bonds are negotiable, and title thereto passes by delivery. One who takes them in good faith for value takes a good title to them.

2. Where one deposits such bonds for safe-keeping with a banking institution, and the cashier of such institution pledges them, the pledgee, acting in

good faith, takes a good title; and a recovery of the bonds through the fraud and bad faith of such cashier does not divest the title out of the pledgee and revest it in the depositor.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

NATHANIEL MYERS and GLOVER & SHEPLEY, for appellants : United States "five-twenty" bonds are negotiable.— *Sybel* v. *National City Bank*, 54 N. Y. 288 ; *Spooner* v. *Holmes*, 102 Mass. 503.   One who is in possession thereof, without title, may, by a transfer for value, pass to an innocent purchaser a perfect title.— *Murray* v. *Lardner*, 2 Wall. 121 ; *Goodman* v. *Lemonds*, 20 How. 364 ; *Goodwin* v. *Roberts*, 3 Cent. L. J. 621.

A. M. GARDNER and FINKELNBURG & RASSIEUR, for respondent : Depositing such bonds for safe-keeping is not such a delivery as will divest his title, and a sale of them by the depositary passes no such title as will prevent the depositor's recovery.— *Andrew* v. *Dietrich*, 14 Wend. 31 ; *Herring* v. *Hoppech*, 15 N. Y. 409 ; *Ballard* v. *Brugett*, 40 N. Y. 314.   A purchaser can acquire no better title than his vendor has.— *Covill* v. *Hill*, 4 Denio, 323 ; *Rawles* v. *Dishler*, 28 How. Pr. 66 ; *Marvin* v. *Ingless*, 39 How. 329 ; *Ross* v. *Cassidy*, 27 How. Pr. 416.   The delivery of the thing pledged back to the pledgeor by the pledgee terminates the latter's title.— *Homes* v. *Crane*, 2 Pick. 607 ; *Jarvis* v. *Rogers*, 15 Mass. 389 ; *Bodruhammer* v. *Newson*, 5 Jones (N. C.), 107 ; *Mills* v. *Stewart*, 5 Humph. 308.   A corporation is not responsible for the unauthorized and unlawful acts of its officer, though done under color of office.— *Thompson* v. *Sixpenny Savings Bank*, 5 Bosw. 293 ; *Vanderbilt* v. *Richmond T. Co.*, 2 Comst. 479.   A corporation has no right to use a special deposit.   And when a special deposit is made in a bank, the corporation is the bailee, and not its officers.— *Foster* v. *Essex Bank*, 17 Mass. 503 ; *Coffin* v. *Anderson*, 4 Blackf. 403.

BAKEWELL, J., delivered the opinion of the court.

This is a suit to recover four United States bonds known as " five-twenties," with coupons attached; the bonds are described in the petition by their numbers, amounts, and the date of their issue. There was, on the trial, a conflict of testimony as to whether plaintiff was, at any time, the owner of one of the bonds described; but that question, for the purposes of this suit, is set at rest by the verdict of the jury. There was a verdict and judgment for plaintiff; and defendants appeal.

It appears that plaintiff deposited the bonds in question for safe-keeping with the People's Savings Institution, a banking corporation in St. Louis. In November, 1874, Wuerpel, the cashier of the People's Savings Institution, in the name and for the use of the bank, borrowed of defendants $10,000, for which he gave the demand note of the bank, signed by himself as cashier, and at the same time deposited the bonds in question, and other bonds, with defendants, as collateral security for the loan.

On Saturday, January 30, 1875, after two o'clock, P. M., and less than an hour before the close of banking hours, Wuerpel went to defendants, and telling them that the bank had more money than it could dispose of, and therefore desired to pay its note, he handed defendants his check, as cashier, for the amount due, and received in exchange the bonds and note. At the time he gave the check, Wuerpel well knew it would not be paid. He took up on that day other notes and securities from other banks and individuals, by similar fraudulent representations, to the amount of $62,000. On the next day, Sunday, Wuerpel absconded, and the bank never opened its doors again. Its liabilities turned out to be $800,000; its assets, $148,000. The check was duly taken to the office of the bank, on Monday, but the doors were closed. Defendants, by legal proceedings, obtained possession again of the securities of which they had been defrauded by Wuerpel; and Ringling, the original owner

of these particular bonds, seeks in this action to recover them from defendants.

There is only one question presented by this record which is a proper subject for our consideration. It is this : whether the act of Wuerpel as cashier, in depositing the bonds with defendants as collateral for the loan made by them to the bank, was of any force as against plaintiff. The question of fact as to the identity of the bonds was submitted to the jury, and is not before us for review. The question of law, as to whether or not the re-transfer of the bonds to the vaults of the People's Savings Institution, through the fraud of Wuerpel, in any way changed the position of affairs, or affected the legal rights of defendants, we regard as settled by the decision of this court in the *International Bank* v. *German Bank*, 3 Mo. App. 362. We there held, upon a similar state of facts, that rights of the pledgee to the thing pledged were not affected by a fraudulent recovering of possession of it by the pledgeor. In that case the check was presented after the close of the bank on Saturday, and in the case at bar the check might possibly have reached the bank before its door was closed, and in that case might possibly have been paid. But we regard that as wholly immaterial. The holder of the check was not bound to present the check before Monday ; in the course of business he was almost certain not to do so ; and he was guilty of no want of diligence in not doing so.

If the act of Wuerpel in pledging these bonds to defendants passed any title to the bonds, or any right to their possession, that title could not be divested by the fact that the pledgeor recovered possession of the bonds by an act of gross fraud, and the judgment in this case should have been for defendants.

Bonds of the description of those in question are negotiable, and pass by delivery, and any one who takes them in good faith holds a title valid against the world. Suspicion of defect of title, circumstances which in a prudent man

would excite suspicion, gross negligence, will not defeat the title of the one who takes them for a valuable consideration ; this result can be produced only by bad faith. *Murray* v. *Lardner*, 2 Wall. 121.· Bad faith would defeat title to a bank-note ; as, if a man should take from a ragged urchin, whom he had never seen before, a thousand-dollar bill as pledge for the loan of $25, if the bill was stolen the owner might recover it from the pledgee, not because the circumstances would be enough to provoke enquiry, but because they would be wholly inconsistent with good faith. But, in the absence of bad faith on the part of the pledgee, title to a bank-note or to a government bond passes by delivery. There is nothing whatever in the case at bar to raise a suspicion of the perfect good faith of the pledgees : they made a loan to the bank, and received the bonds as collateral from the proper officer of the bank ; the whole transaction was made according to the usages of commerce. The pledgees had, therefore, a title to the bonds as against all the world, and had and have a right to hold them or dispose of them according to the terms of the pledge. The return of these bonds by the pledgees to Wuerpel, or to the bank, the pledgeor, did not divest the title they had acquired, because it was effected by a dishonest trick. It is, as far as the rights of the pledgees are concerned, precisely as if Wuerpel had stolen them from their safe. The plaintiff, when he deposited his bonds in the People's Savings Institution, put it in the power of that bank, through its officers, to sell or pledge these securities. It is true, he gave them no moral right to do so ; he trusted the bank and the bank betrayed its trust to him, as it did to all its depositors alike, whether the deposits were general or special. It is the misfortune of plaintiff; but the loss must fall on him, and not on the defendants. The bank had no title to these bonds, but it had possession ; and this fact of possession, which it acquired in consequence of the trust reposed in the bank by the plaintiff, enabled the bank, by a transfer for value to an in-

nocent purchaser, to pass a perfect title, because the paper was negotiable ; and, for wise reasons, the law-merchant has established this as the rule of negotiable paper.

The fact that there were in this case two acts of fraud, and that by the second fraud these bonds were replaced in the vaults of the bank, from which they had been dishonestly removed, does not put the plaintiff in the position which he would have occupied had the deposit been respected from the first, because the first fraud did pass title to the innocent purchaser for value ; the second fraud passed no title, because it was the fraud of the purchaser himself, and no value was given.   Let it be supposed that Ringling had made a special deposit with the People's Savings Institution of a hundred-dollar note, in a sealed envelop ; that Wuerpel had opened the envelop, taken the note, and purchased a horse with the money : the note would have passed absolutely to the horse-trader.   Suppose Wuerpel had then picked the pocket of the trader ; it will hardly be claimed that this return of the note to Wuerpel's possession would revest Ringling's title to the note.   The question would be, Was the note the property of the trader when his pocket was picked?   Wuerpel, having the note in his possession as trustee for Ringling, could, from the character of negotiability inherent in the paper, pass to any one who, in good faith, gave him value for it, an absolute title to the note, discharged of any trust ; but Wuerpel could not reacquire title, whether as trustee or otherwise, by violence or fraud.

It is not necessary particularly to examine the instructions given and refused in this case.   The court correctly instructed that the acts of Wuerpel, as cashier, were, in regard to the matters in evidence, the acts of the People's Savings Institution, and also that defendants were not bound to present the cashier's check for payment on the day it was received.   But the court gave the following instructions, which were inconsistent with the views of the

law expressed in this opinion, and inconsistent with rulings of this court in the case of *International Bank* v. *German Bank, supra:*

" 1. If the jury believe from the evidence that plaintiff deposited the bonds in question with the People's Savings Institution as a special deposit, for safe-keeping only, being at the time the owner thereof; that plaintiff by no act of his parted with the right of property therein; that the bonds were actually in the possession and custody of said institution, as such special deposit, on the 2d day of February, 1875, when they were taken by defendants, then the jury must find for plaintiff. And it is no defence as to this plaintiff that during the period of said deposit the cashier of said institution pledged said bonds to defendants for a loan, and that defendants were induced to return them to the possession of said institution through fraud, or without consideration, provided the jury further find that plaintiff had no knowledge of, and in no way authorized or assented to, any such transaction on the part of said cashier, and never consented thereto.

" 2. If the bonds in question had been deposited in the People's Savings Institution by the plaintiff for safe-keeping, and the same had been removed therefrom without his (plaintiff's) authority, knowledge, or consent, then the return of the same by defendants, on or about the 30th of January, 1875, restored them to the custody of the People's Savings Institution for plaintiff's benefit, and all of plaintiff's rights of property re-attached thereto; and although such return may have been made by defendants without any valuable consideration, and under false and fraudulent representations made to them by the cashier of said institution, still it gave them no right to reclaim said bonds, as against the plaintiff, if they further find that the plaintiff was the owner of the same at the time.

" 3. If the jury find from the evidence that the bonds in question were the property of the plaintiff, and that at the

commencement of this suit they were in the possession or under the control of the defendants, then they must find for the plaintiff, and assess the value of said bonds, with the damages for the detention of the same by the defendants.''

The judgment of the Circuit Court, for the reasons given above, must be reversed, and the cause remanded for a new trial in accordance with this opinion.

It is suggested by counsel for appellant that judgment should be entered here for defendants. The plaintiff has tried the case upon a view which we think erroneous, and he may possibly have had it in his power to show additional facts which, on his theory of the case, he may have thought of little importance to his recovery. Of this we can know nothing. We are unwilling to enter final judgment when we cannot feel assured that no possible injustice would be done by such a course.

The judgment of the Circuit Court is reversed and the cause remanded. All the judges concur.