**COUNSELMAN v. PITZER.** *

No. 6386.

United States Court of Appeals for the District of Columbia.

Argued March 6, 1935.

Decided Sept. 23, 1935.

Rehearing Denied Oct. 12, 1935.

James F. Reilly, of Washington, D. C., for appellant.

Aubrey St. C. Wardwell, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

An appeal from a judgment entered upon a directed verdict where both parties requested a peremptory instruction.

The appellant, as executrix of the estate of Miss Counselman, commenced this suit in the lower court against Rufus F. Pitzer to secure possession of four certain promissory notes upon a claim that they were assets of the decedent's estate. The appellee, as defendant below, denied the plaintiff's claim and asserted a right to the possession and ownership of the notes in question.

The issue was tried to the jury and at the close of the testimony each party requested the court to direct the jury to return a verdict in its favor. The court thereupon directed the jury to return a verdict in favor of the defendant. Whereupon the plaintiff appealed.

It is the established rule that where both parties request a peremptory instruction and do nothing more, they thereby assume the facts to be undisputed and, in effect, submit to the trial judge the determination of the inferences proper to be drawn therefrom. And upon review, a finding of fact by the trial judge under such circumstances must stand if the record discloses substantial evidence to support it. Williams v. Vreeland, 250 U. S. 295, 298,

Writ of certiorari denied 56 S. Ct. 310, 80 L. Ed. —.

39 S. Ct. 438, 63 L. Ed. 989, 3 A. L. R. 1038.

We are of the opinion that the record in this case discloses substantial evidence to support the judgment of the lower court and that it should be affirmed.

The four promissory notes in question are drawn in identical terms. They were executed on July 27, 1928, by Martin H. Bray as maker, and were secured by trust deed upon his real estate; they were made payable three years after date to the order of H. Marvin Herndon in the sum of $500 each with interest at 6 per cent. per annum, payable semiannually. The notes were made payable at the Park Savings Bank, of Washington, D. C. The payee named in the notes, H. Marvin Herndon, was the assistant cashier of the Park Savings Bank and in that capacity received the notes as the property of the bank.

On September 7, 1928, the Park Savings Bank sold the notes for value to Miss Counselman, the plaintiff's testate. Upon that date the notes were indorsed in blank by Herndon, "without recourse," and no other indorsement was made upon them. The name of Miss Counselman never appeared upon the notes at any time or in any manner; nor did the notes contain any evidence whatsoever of her title to any of them. The interest upon the notes was regularly paid by Mr. Bray when due to the bank and credited in the account of Miss Counselman with the bank.

The bank did not at any time deliver the actual possession of the notes or any of them to Miss Counselman, but continued to hold them as her agent for the purpose of collecting the interest and principal when due and crediting such collections in the savings account of Miss Counselman with the bank. The notes continued to be held in the possession of the bank without any indorsement upon them except the aforesaid blank indorsement of the bank's cashier.

On July 27, 1929, the date of the maturity of the notes, the maker, Martin H. Bray, desired to secure an extension of them for a period of three years, and applied to the bank for that purpose. Bray had no knowledge or notice of the fact that Miss Counselman had any interest in the notes; nor that the Park Savings Bank had ceased to be the actual owner of them.

On the date of his application for an extension Bray signed a so-called "extension slip," which was attached to each of the notes and contained the following provision:

"The time of payment of this note is hereby extended for a period of three years to July 27, 1934, with interest at the annual rate of six percent, payable semi-annually. In consideration of this extension of time, I hereby renew and assume the note and agree to pay the principal and interest now stipulated without demand, notice, or protest. Said note and the deed of trust securing the same are to remain otherwise unimpaired and in full force and effect.

"[Signed]   Martin H. Bray,
        "1233 Madison St. NW.,
        "Present owner of property."

Each slip contained also the following: "For and in consideration of the assumption of the within note and the guarantee of payment of principal and interest, the extension above set forth is hereby agreed to." This latter provision, however, was not signed by either Miss Counselman or the bank.

On August 22, 1931, the following letter was sent to Mr. Bray by the bank:

"My Dear Mr. Bray: Recently you requested an extension of first trust loan on property 805 Quintana Place northwest in the amount of $5,000.

"Our appraisal committee granted an extension of $4,500.

"We are enclosing herewith duly canceled note No. 1, for $500, and beg to advise that there will be the following expenses in connection with renewal of $4,500: Appraisal fee, $6.00; commission, 1%, $45.00; tax certificate, $1.00; insurance premium, $28.13. [Total] $80.13.

"Kindly let us have your check covering the above mentioned expense not later than September 1.

"Very truly yours,
        "[Signed]   H. Marvin Herndon,
                "Assistant Cashier."

Bray paid the aforesaid charges to the bank as requested.

On June 7, 1932, the defendant, Rufus F. Pitzer, purchased the notes sued upon from the Park Savings Bank. Afterwards the interest on the notes was received by Pitzer from the bank. At the time of this purchase Pitzer had no knowledge or notice of any kind that the Park Savings Bank did not have the right to sell the

notes. Pitzer read the extension slips which were attached to the notes and the particular part thereof which was signed by the maker, Martin H. Bray. He also noticed the part of the extension slip to be signed by the holder, but did not notice that it had not been signed.

It appears that from and after November 2, 1932, until the date of her death Miss Counselman was very ill at home and transacted no business of any kind whatever. She did not know of the sale of the notes to Pitzer by the Park Savings Bank, and received no part of the consideration paid therefor.

At all the times above mentioned and until March 4, 1933, the Park Savings Bank was doing a banking business in the city of Washington and enjoyed good credit. It was closed by the Presidential Proclamation of March 4, 1933, and upon examination was found to be insolvent and never reopened. The present controversy arises from the fact that the bank sold the notes for full value to Mr. Pitzer without accounting to Miss Counselman therefor, thereby imposing a corresponding loss upon one of these two parties.

■ In our opinion these circumstances disclose that the maturity of these notes was extended by the bank from July 27, 1931, to July 27, 1934, and that the purchase of the notes for full value by Pitzer on June 7, 1932, without notice or knowledge of the preceding facts and circumstances above set out invested Pitzer with the title to the notes superior to the claim of Miss Counselman. At the time of the extension of the notes and also at the time of the sale thereof to Pitzer the bank was in the possession of the notes under a blank indorsement which made them payable to bearer, and which entitled a stranger without knowledge of the circumstances to rely upon the bank's title thereto.

"An agent having in his possession, for discount, sale, safe-keeping, or other purposes, on behalf of his principal, bills, notes, or other paper belonging to his principal, indorsed in blank, or in such other form as to permit transfer of title thereto by mere delivery, may be regarded, by strangers having no notice of the agency or the capacity in which such paper is held, as the owner thereof, and dealt with accordingly in respect to it." 3 R. C. L., Bills and Notes, 1083.

"Where a note or bill payable to bearer has been delivered to an agent, and [transferred] by the agent without authority from his principal, and has come into the hands of a bona fide holder for value before maturity, it will be good against all parties notwithstanding the agent's want of authority. [Citations] * * * From these cases the rule may be laid down that possession carries with it presumptively the ownership and power to dispose of commercial paper payable to bearer or indorsed in blank, and the bona fide holder of such an instrument is not subject to any defense arising out of the agent's fraud or want of authority." Randolph on Commercial Paper, vol. 1, §§ 390, 391. See, also, Ringling v. Kohn, 4 Mo. App. 59; Howell v. Commercial Nat. Bank, 40 App. D. C. 370; Giovanovich v. Citizens' Bank, 26 La. Ann. 15; Eversole v. Maull, 50 Md. 95; Bank v. Ohio Valley Furniture Co., 57 W. Va. 625, 50 S. E. 880, 70 L. R. A. 312.

■ It is contended that inasmuch as neither Miss Counselman nor the bank signed the extension slips as holder at the time the same were signed by Bray, the extension was not valid. This, however, does not follow. A contract for such an extension may be made orally, or in writing, or partly orally and partly in writing. "The form of the contract is immaterial if it is binding, and the agreement need not be expressed but may be inferred from acts, declarations, facts, and circumstances. In other words, it is not necessary that there be an express agreement extending time, but it is sufficient if such is the necessary effect of the agreement. The extension may be evidenced by an indorsement on the note, as where the words 'received, renewed' are indorsed. So the consent of the payee of a sight draft to its acceptance in the future at four months is an extension of time." 8 C. J. 429, § 630 (With citations; Randolph on Commercial Paper (2d Ed.) § 957).

The extension of the notes by the bank is governed by the same principles which govern its transfer of them. It is plain that by force of the facts no suit could have been maintained against Bray for the collection of the notes before their maturity as extended, nor could Bray have compelled the bank to accept payment of them prior to such date. Both parties had agreed to the extension, and both were

bound by it. Moreover, the extension slip attached to each note served as notice of the extension to any future holder of it. The facts disclose that Pitzer was a bona fide holder of the notes for value before maturity and in due course.

These conclusions are consistent with the principles of the common law, and are supported by the following applicable sections of the Negotiable Instruments Act, D. C. Code, chapter 46:

"Sec. 1313. *Instrument payable to bearer.*—The instrument is payable to bearer— * * *

"Fifth. When the only or last indorsement is an indorsement in blank."

"Sec. 1356. *Who is holder in due course.*—A holder in due course is a holder who has taken the instrument under the following conditions:

"First. That it is complete and regular upon its face.

"Second. That he became the holder of it before it was over due, and without notice that it had been previously dishonored, if such was the fact.

"Third. That he took it in good faith and for value.

"Fourth. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

"Sec. 1360. *Notice of infirmity.*—To constitute notice of an infirmity in the instrument, or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect or knowledge of such facts that his action in taking the instrument amounted to bad faith."

"Sec. 1361. *Holder in due course free from defenses.*—A holder in due course holds the instrument free from any defect of title of prior parties and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon." (D. C. Code 1929, T. 22 §§ 10, 72, 76, 77).

■ It may be added that in the absence of the foregoing considerations this case would be governed by the rule that where a loss must fall upon one of two innocent parties that one whose conduct occasioned the loss must bear it. In this case Pitzer acted in good faith and without negligence and under the rule just cited he should not be compelled to suffer a loss occasioned by Miss Counselman's confidence in the bank.

In National Safe Deposit, Savings & Trust Co. v. Hibbs, 229 U. S. 391, 33 S. Ct. 818, 57 L. Ed. 1241, it appeared that a bank's trusted agent, in gross breach of his duty, took certain stock certificates belonging to the bank, indorsed and authenticated with evidence of title, to a broker who, in ordinary course of business and in good faith, sold them to third parties for full value and paid over the proceeds to such agent. In a suit by the bank against the broker it was held that where one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it. Stock certificates, the court said, are a peculiar kind of property; although, strictly speaking, not negotiable paper, they are frequently the basis of commercial transactions and bought and sold in open market as negotiable securities are. The court held that under the principles of equitable estoppel, the bank was estopped to make any claim against the broker.

See, also, Pennsylvania Railroad Co.'s Appeal, 86 Pa. 80; McNeil v. Tenth Nat. Bank, 46 N. Y. 325, 7 Am. Rep. 341; Bradford v. Williams, 91 N. C. 7; Clement v. Leverett, 12 N. H. 317.

Appellant relies as authority upon District Nat. Bank v. Trimble, 46 App. D. C. 319, and Foley v. Smith, 6 Wall. (73 U. S.) 492, 18 L. Ed. 931. These cases, however, do not seem to be relevant to the present issue.

The promissory notes involved in the Trimble Case were overdue for seven years before they were fraudulently hypothecated to the District National Bank. The court observed: "The notes being seven years overdue when taken over by the bank, there can be no pretense of an innocent purchase without notice." Neither did the facts establish a case of equitable estoppel under the rules above set out.

In the Foley Case the note in question was overdue and protested before it came into the possession of Foley & Co. by the fraudulent transfer of a third party. Their title therefore was subject to the defects in that of the party who had fraudulently transferred it to them. The court there-

fore held that their possession of the notes was invalid.

The decision of the lower court is affirmed with costs.

HITZ, J., sat with the court at the hearing of this appeal, but departed this life before it was decided.