**RAGAN v. WARDELL et al.**

No. 6837.

United States Court of Appeals for the District of Columbia.

Decided May 3, 1937.

Rehearing Denied June 21, 1937.

James R. Murphy and Arthur J. Hilland, both of Washington, D.C., for appellant.

Brice Clagett and Charles E. Wainwright, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

MARTIN, Chief Justice.

This is an appeal from a decree of the District Court of the United States for the District of Columbia in a case wherein appellant as plaintiff sued for the proceeds of certain promissory notes, which were held by the appellee as receiver of the District National Bank of Washington, D. C.

The facts are in substance as follows: On July 30, 1920, John L. Warren executed and delivered his six several promissory notes payable to the order of Monroe Warren and Robert Warren, three of which were in the sum of $1,000 each, and three in the sum of $500, each, payable three years after date, with interest at 6 per centum per annum until paid, secured by deed of trust on certain real estate situate in the District of Columbia. Shortly after the making of the notes and long prior to their first maturity date, they were indorsed in blank by the payees and were transferred for value to Margaret L. Ragan, the plaintiff below.

Prior to the maturity of the notes John L. Warren, the maker of the notes died, and the property securing the deed of trust was conveyed to C. Preston Gainor, subject to the trust, by the widow and executrix of the deceased.

On July 30, 1923, the date of the maturity of the notes, an "extension slip" extending their date of payment until July 30, 1926, was executed by Mr. Gainor, as owner of the property, and by Margaret L. Ragan, as holder of the notes; the slip being attached to the six original notes and made a part thereof. On July 30, 1926, a similar extension slip was signed by Mr. Gainor and Mrs. Ragan, and was attached to the notes, whereby their date of payment was extended to July 30, 1929. On July 30, 1929, the date of the maturity of the notes was similarly extended by the foregoing parties until July 30, 1932, by means of an extension slip attached to the notes.

On July 30, 1932, six several extension slips each applying to one of the notes were executed by Mr. Gainor and Mrs. Ragan and were severally attached to the original notes and became a part of them, and extended their time of payment until July 30, 1935. By the terms of the last-mentioned slips Mr. Gainor stipulated as follows: "I hereby renew, assume and agree to pay the within note and interest thereon at the rate aforesaid, without demand, notice, or protest, and hold myself bound for the payment thereof. The note and deed of trust securing same to remain otherwise unimpaired and in full force."

In consideration of this assumption and guarantee, Mrs. Ragan, as holder of the notes, agreed to the extension thereof.

During this entire period the notes, except for the attached slips, continued in form as first written; the name of John L. Warren (since deceased) remained thereon as maker; and the names of Monroe Warren and Robert B. Warren as indorsers without qualification or restriction. The name of Mrs. Ragan did not appear upon the notes themselves although it was signed upon the extension slips as "holder" of the notes. The name of Mr. Gainor did not appear upon the notes themselves, but appeared only upon the slips as the owner of the mortgaged property.

In October, 1932, which was at a time subsequent to the execution and delivery of the last-mentioned several extension slips, and prior to the expiration of the due date as extended by them, Mrs. Ragan, an elderly widow, caused the notes, together with the extension slips attached thereto, to be delivered to William P. Normoyle. Normoyle had been Mrs. Ragan's agent and had made investments for her, and she delivered the notes to him for safekeeping "because she regarded him as a responsible person."

Afterwards, on November 4, 1932, Normoyle, who had long been a customer of the District National Bank and who was then indebted to the bank in the sum of $2,738.63, borrowed an additional sum of $4,000 from the bank. As security for the loan then made to him, and also for his pre-existing debt, Normoyle fraudulently delivered to the bank the six notes belonging to Mrs. Ragan, totaling $4,500, stating that they were his property, and the bank accepted them as collateral for Normoyle's debt to the bank, including

both the new loan and the unpaid balance of his former loan.

This transaction was made without the knowledge or consent of Mrs. Ragan, who until the fall of 1935 remained under the impression that the notes were in the possession of Normoyle as her agent.

In 1933 the District National Bank was found to be insolvent, and a receiver was appointed for it. Since the appointment of the receiver, the notes have been paid in full by Mr. Gainor and the proceeds are held by the receiver as substituted collateral in the place of the notes above described.

The present suit was brought by Mrs. Ragan against the receiver, claiming to be the owner of the notes and of the proceeds thereof, and alleging that they had been delivered by Normoyle to the bank fraudulently and without authority, and claiming that she was and continued to be the owner thereof, and entitled to the proceeds in the hands of the receiver. On the other hand, it is claimed by the receiver that the notes bearing the unrestricted indorsement of the original payees had become and remained negotiable and payable to bearer, and were transferable by delivery, and that the bank received them in due course from Normoyle for value, without notice of infirmity, before maturity according to the last extension slips attached to them, and accordingly, that it was entitled to hold the proceeds thereof.

Upon the trial of this issue, the district court held:

"Aside from any question whether the notes claimed by Mrs. Ragan continued to be negotiable so far as the original parties were concerned, I think that as between the guarantor and the holder they were negotiable by virtue of the extension slips attached to the notes. They were in the possession of the agent, Normoyle, by the authority of their owner, and as, in my opinion, there was nothing on the face of the papers to charge the bank with notice of the lack of authority on the part of Normoyle, the bank took them as a bona fide purchaser for value and without notice."

Thereupon the court dismissed the plaintiff's bill of complaint and the present appeal was taken.

■ We are of the opinion that the decision of the district court is correct. When the promissory notes in question were presented to the bank by Normoyle on November 4, 1932, the body of the notes and the indorsements thereon were in the same form as when first delivered to Mrs. Ragan. The indorsements in blank by the original payees of the notes had the effect of making them negotiable as "bearer paper." The original date of their maturity had long since passed, but they bore slips extending the time of payment until July 31, 1935.

We think, that the extensions did not impair or defeat the negotiable character of the notes. When thus extended, the notes were held by Mrs. Ragan under a blank indorsement, and she continued to hold them as notes payable to bearer and transferable by delivery. By force of the extension slips, Mr. Gainor was substituted as absolute guarantor in the debt and the date of payment of the notes was postponed, but they still remained payable to the order of the payees and bore their blank indorsement. Accordingly the bank received them as negotiable paper. Counselman v. Pitzer, 65 App.D.C. 71, 79 F.(2d) 707.

■ We are of the opinion that the extension slips as attached to the notes did not serve as notice to the bank of any infirmity in Normoyle's title thereto. He was in possession of the notes and apparently entitled to transfer them by delivery, and the bank was not guilty of bad faith in receiving them from Normoyle under these circumstances.

The following provisions of the Negotiable Instruments Act, D.C.Code (1901) c. 46, are applicable herein:

"Sec. 1313. *Instrument payable to bearer.—The instrument is payable to bearer—* * * *

"Fifth. When the only or last indorsement is an indorsement in blank."

"Sec. 1356. *Who is holder in due course.—*A holder in due course is a holder who has taken the instrument under the following conditions:

"First. That it is complete and regular upon its face.

"Second. That he became the holder of it before it was over due, and without notice that it had been previously dishonored, if such was the fact.

"Third. That he took it in good faith and for value.

"Fourth. That at the time it was negotiated to him he had no notice of any in-

firmity in the instrument or defect in the title of the person negotiating it."

"Sec. 1360. *Notice of infirmity.*—To constitute notice of an infirmity in the instrument, or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect or knowledge of such facts that his action in taking the instrument amounted to bad faith.

"Sec. 1361. *Holder in due course free from defenses.*—A holder in due course holds the instrument free from any defect of title of prior parties and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon." (D. C.Code 1929, T. 22, §§ 10, 72, 76, 77.)

We are of the opinion that the evidence in the case does not disclose facts sufficient to prove notice to the bank or its officers of the infirmity in Normoyle's title to the notes. It does not appear that they had actual knowledge of the infirmity or defect, or knowledge of such facts that their action in taking the notes "amounted to bad faith." Hotchkiss v. National Shoe & Leather Bank, 21 Wall. 354, 22 L.Ed. 645; Swift v. Smith, 102 U.S. (12 Otto) 442, 26 L.Ed. 193; White-Phillips Co., Inc.

v. Graham, 74 F.(2d) 417, decision of the Circuit Court of Appeals, Seventh Circuit, subsequent to the case of Chicago Title & Trust Co. v. Brugger, 196 Ill. 96, 63 N.E. 637; Counselman v. Pitzer, 65 App.D.C. 71, 79 F.(2d) 707.

"An agent having in his possession, for discount, sale, safe-keeping, or other purposes, on behalf of his principal, bills, notes, or other paper belonging to his principal, indorsed in blank, or in such other form as to permit transfer of title thereto by mere delivery, may be regarded, by strangers having no notice of the agency or the capacity in which such paper is held, as the owner thereof, and dealt with accordingly in respect to it." 3 R.C.L., Bills and Notes, 1083.

The appellant relies as authority upon District Nat. Bank v. Trimble, 46 App.D. C. 319, and Foley v. Smith, 6 Wall. (73 U. S.) 492, 18 L.Ed. 931. These cases, however, do not seem to support appellant's claim. They were discussed by us in the case of Counselman v. Pitzer, supra, wherein the issues were substantially similar to those involved in this case, and we need only refer to the conclusions therein set out.

The decree of the lower court is affirmed with costs.