**OBER v. RIGGS NAT. BANK OF WASHINGTON, D. C.**

No. 51.

Municipal Court of Appeals for the District of Columbia.

April 6, 1943.

John A. Bresnahan, of Washington, D. C., for appellant.

[2] Simms v. Booth, supra.

Turner Taliaferro Smith, of Washington, D. C. (Charles M. Goetz, of Washington, D. C., on the brief), for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

RICHARDSON, Chief Judge.

Plaintiff herein is the holder of a promissory note in the sum of $1000, one of a series secured by a deed of trust on certain real estate. Defendant Ober purchased the property on which the note was secured without assuming or becoming personally liable thereon. However, when the note matured he secured an extension of the time of payment, and thereafter successive extensions to November 16, 1937, on each occasion signing an agreement wherein he assumed and agreed to pay the note. These agreements were on the same printed form, the last dated January 23, 1937, being as follows:

"The time of payment of the annexed note: No. 18 of 22 for $1000.00, dated November 16, 1925, due November 16, 1936, 6%, signed by Carlton E. Moran and Frederick A. Blumer, secured by deed of trust on lot 30, square 1933, 3614 Fulton Street, N. W., is hereby extended to November 16, 1937, with interest thereon at the rate of six per cent per annum, until paid, payable semi-annually, and in consideration of the consent by the present holder of said note to this extension I hereby assume and agree to pay said note and interest thereon at the rate aforesaid without demand, notice or protest, or notice of the acceptance of this guarantee. Said note and the deed of trust securing same to remain otherwise unqualified and in full force and effect.

"SEE PREPAYMENT PRIVILEGE ON REVERSE SIDE
"GEORGE C. OBER, Jr.,
"Owners of Property.

"For and in consideration of the assumption and guarantee of payment of the note as above provided, the said extension is hereby agree to.

" v.

"HOLDER OF NOTE."

On the reverse side is a memorandum, signed by plaintiff and defendant, that on thirty days' notice the note may be paid at any time.

In January, 1937, defendant sold the property to one Peterson. The transfer was made without an assumption of the trust indebtedness by the purchaser.

On November 16, 1937, plaintiff entered into an extension agreement with Peterson, identical in form with those signed by defendant, but which reduced the interest rate during the extension period from 6% to 5½% and extended the payment of $500 for one year and the remaining $500 for two years. Defendant was not advised and had no knowledge of the making of this extension agreement.

Subsequently Peterson defaulted, the property was sold and a deficiency resulted. The bank sued defendant Ober for the amount of this deficiency.

The defense was that the extension to Peterson, without defendant's knowledge or consent, discharged defendant from liability on his undertaking. The trial court overruled this, and gave judgment for plaintiff. From that judgment defendant appeals.

The defense is based on the theory (1) that the liability incurred by signing the extension agreement was secondary and not primary, or (2) that it became secondary when Peterson subsequently made himself responsible to the holder of the note. If either hypothesis were correct, the extension of the time of payment would have discharged defendant's liability.

Treating himself as a party liable on the note, certain sections of the Negotiable Instruments Act, Title 28, Sec. 504 and 802 D.C.Code, 1940 Edition[1], are cited by defendant. Sections 119 and 302 would be equally pertinent.[2]

[1] Sec. 504: "A person placing his signature upon an instrument otherwise than as a maker, drawer, or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity."

Sec. 802: "A person secondarily liable on the instrument is discharged— * * * Sixth. By an agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable or unless the right of recourse against such party is expressly reserved."

[2] Sec. 119: "No person is liable on the instrument whose signature does not ap-

In our opinion, however, defendant was not at any time a party to or liable on the note. His agreement was wholly collateral to and legally independent of the note, and the code sections cited have no application.

It is true that in Ragan v. Wardell, 67 App.D.C. 222, 91 F.2d 253, 254, the court in the preliminary statement of facts in its opinion, speaking of a similar extension agreement, said, "the slip being attached to the six original notes and made a part thereof", and then describing a later extension said that the slips "were severally attached to the original notes and became a part of them." But these expressions were merely recitals from the statement of evidence in the transcript; the case did not involve the status or liabilities of any of the parties to the note or extension agreement, and the statements quoted cannot be regarded as rulings by the court on a matter of law.

In Bergmann v. Puhl, 195 Wis. 120, 217 N.W. 746, 747, 56 A.L.R. 915, after a note had been delivered, a guaranty of the vendors was annexed. The suit was brought on the note against the makers and the guarantors. The latter demurred on the ground of misjoinder of actions. On appeal the demurrer was sustained. The court said: "The plaintiff wholly misconceived the effect of attaching a separate document executed subsequently to the making and delivery of a promissory note, to the note itself."

After quoting the section (Sec. 504 supra) of the Negotiable Instruments Act, the opinion continues: "The only exception to the rule that an indorser becomes such only by placing his signature upon the instrument is that where the back of the instrument has been covered by indorsements or other writing, leaving no room for further indorsements, a strip of paper called an 'allonge' may be attached to the instrument and subsequent indorsements may be written thereon. When these conditions are complied with, the writing upon the allonge has the same effect as if it were made upon the instrument itself." [3]

Accordingly we must look to defendant's agreement with the plaintiff to determine his liability. [4]

The relationship of the several parties who successively owned the property in question to the holder of the note secured thereon, and to each other is, we think, governed by various local cases including Shepherd v. May, 115 U.S. 505, 6 S.Ct. 119, 121, 29 L.Ed. 456, arising from this District. Shepherd, the original owner of certain property, executed a deed of trust and note to May. Thereafter Shepherd sold the property to Walker, who did not assume the incumbrance. When the note matured, Walker, without the knowledge or consent of Shepherd, secured from May an extension of the note. In the suit by May against Shepherd the latter claimed that at the time of the extension Walker undertook to pay the note.

The court held that the contention of Shepherd that Walker became the principal debtor and that his own liability continued only as surety was not well founded. The court said: "And if Walker had expressly promised May to pay the debt, that would not, without the assent of May, have converted Shepherd from a principal debtor into a surety merely. Cucullu v. Hernandez, 103 U.S. 105 [26 L.Ed. 322]; Rey v. Simpson, 22 How. 341 [16 L.Ed. 260]. The only way in which Walker could become the principal debtor of May, and Shepherd the surety, was by the mutual agreement of all three. There is no proof of any such agreement. It follows that as the relation of principal and surety did not exist between Walker and Shepherd, the latter was not discharged from his liability to May by the contract of May with Walker to extend the time for the payment of the money due on Shepherd's note."

In Cucullu v. Hernandez, 103 U.S. 105, 116, 26 L.Ed. 322, 41 A.L.R. 285, the purchaser had assumed payment of the mortgage, differing to that extent from the

pear thereon, except as herein otherwise expressly provided."

Sec. 302: "The indorsement must be written on the instrument itself or upon a paper attached thereto."

[3] "In the Annotation (56 A.L.R. 921) it is said: "It may be very generally stated that by the great weight of authority a writing not on the instrument itself is ineffective to charge one with the liability of an indorser, or to give rights of an indorsee. The one exception to this rule is in the case of an 'allonge' "".

[4] In the numerous cases involving liability of persons executing note extension agreements we have found no instance where such a person was regarded as liable "on the note" as distinguished from liability "for the note".

facts of the present case. The court, however, said in the course of its opinion: "It cannot, we think, be reasonably claimed that a debtor is converted into a surety by his creditor's acceptance of an additional promise from a third person to pay the debt due him by his debtor. There is no element of suretyship in such a contract, unless it be that the additional debtor might be regarded as surety for the original debtor. The relation between the creditor and the original debtor is not changed by such an arrangement."

Kaufman v. Penn Mut. Life Ins. Co., 62 App.D.C. 37, 64 F.2d 160, involved an action against the guarantor of certain notes who had indorsed on each a guaranty of payment. The notes were secured by a deed of trust on real estate which the maker of the notes thereafter sold and conveyed without an assumption of the debt by the purchaser. The latter thereafter entered into an extension agreement with the holder of the notes, and it was claimed that this discharged the liability of the guarantor. The court held that an extension granted by the holder of a note by contract with the third person, not a party to the note, does not have the effect of releasing the guarantor even if made without his knowledge or consent. It drew a distinction between the effect of an extension of time granted by the holder to the guarantor and one given to the person for whom the guaranty was given, which latter would of course release the guarantor.

Another phase of the same subject was considered in De Leon v. Rhines, 64 App.D.C. 73, 74 F.2d 477, 479. Rhines had executed a note and deed of trust to Dumas. Thereafter he sold the real estate to Brown who took title subject to the trust without assuming its payment. Brown sold to Cameron who by the conveyance assumed and agreed to pay the note. The holder of the note granted an extension to Cameron and in the suit against Rhines this extension was pleaded as a discharge. The court cited the foregoing cases on this subject and said: "According to the principles thus enunciated, as applied to the present case, the only way whereby Cameron could have become the principal debtor in the obligation of Rhines was by the mutual agreement of Dumas, Cameron, and Mr. and Mrs. Rhines."

The subject was also considered in Wolfe v. Murphy, 47 App.D.C. 296, where the extension agreement was made between the holder of the note and the immediate purchaser from the maker. In the conveyance from the maker the purchaser had assumed the payment of the note. It was held that the extension did not discharge the liability of the maker.

Defendant contends that if his liability was not secondary prior to the agreement between the bank and Peterson, whereby the latter assumed payment of the note, it became such when this assumption of liability on Peterson's part occurred. But as Peterson's assumption of liability was a part of the extension agreement, which appellant claims relieved him of all liability, the result would be that at no time could it be said that his liability was secondary.

Applying these decisions to the facts of the present case we find that there was no privity of contract, relation of principal and surety, or subordination of liability as between the original makers of the note in suit, the defendant Ober, or his vendee Peterson. From each, at different times, the holder of the note obtained an absolute and unconditional promise to pay the debt represented by the note. The original makers obligated themselves by the terms of the note; the subsequent successive owners of the property by their assumption of and agreement to pay the note. What rights of action might accrue in favor of one who might pay the note as against the others is no concern of the plaintiff.

The defendant strongly urges that the holder of the note estopped himself to assert the liability of the defendant by entering into the extension agreement with his vendee Peterson. It is urged that plaintiff thereby made impossible a foreclosure of the deed of trust when it matured according to its agreement with defendant, and that defendant, had he paid the note according to his own promise, could not have protected himself by foreclosure of the lien.

The same contention was made by the maker of the note when sued in the case of Wolfe v. Murphy, supra, and was the basis of the dissenting opinion in that case by Mr. Justice Robb. It was overruled in the majority decision, and persons subsequently granting extensions to owners of property purchased from the original lienor have been entitled to rely upon the rule so established. In any event we are bound by the decision of the majority in that case.

The suggestion that a continuing liability over many years would result if a person situated as is the defendant were not released by extensions of the note is answered by the statute of limitations.[5]

Affirmed.